WILCOXON v. CITY OF BLUFFTON ET AL.

[No. 18,659. Filed June 14, 1899. Rehearing denied Oct. 12, 1899.]

MUNICIPAL CORPORATIONS.—*Bonds for School Buildings Constitute Debt of Civil City.*—School bonds issued under the act of 1873, §5975 Burns 1894, for the purpose of obtaining funds for the erection of school buildings constitute an indebtedness against the civil city, and must be taken into consideration in ascertaining the aggregate indebtedness of such municipality.

From the Wells Circuit Court. *Reversed.*

H. T. *Wilcoxon*, for appellant.

J. A. *Burhans*, C. E. *Sturgis*, Walter *Olds* and *C. F. Griffin*, for appellees.

| | |
|---|---|
| 153 | 267 |
| 155 | 196 |
| 155 | 198 |
| 155 | 209 |
| d155 | 213 |
| 155 | 214 |

| | |
|---|---|
| 153 | 267 |
| 159 | 121 |
| 159 | 515 |
| 153 | 267 |
| d161 | 49 |
| 162 | 174 |
| 162 | 208 |

| | |
|---|---|
| 153 | 267 |
| e163 | 227 |

| | |
|---|---|
| 153 | 267 |
| 166 | 627 |

JORDAN, C. J.—Appellant, a taxpayer of the city of Bluffton, Indiana, a city organized under the general laws of this State, unsuccessfully prosecuted this action in the lower court to enjoin the levying and collection of taxes by said city for the payment of interest and principal of certain water-works bonds alleged to have been issued by the city of Bluffton on March 1, 1894, and by it negotiated to the amount of $6,500, in order to procure money to extend and improve the water-works system owned and operated by the city.

The complaint assails the validity of these bonds, upon the ground that they were issued and negotiated in violation of article 13 of the Constitution of this State, which forbids any political or municipal corporation from becoming indebted to an amount in excess of two per cent. of the value of its taxable property. The complaint *inter alia* charges that at the time these water-works bonds were issued, the taxables of the city of Bluffton, as shown by the previous assessment, for State and county taxes, were of the total value of $1,672,-625, and that the city at that time was indebted to the amount of $32,500, part of which indebtedness consisted of $12,000 in certain school bonds issued and sold by the city of Bluffton, on April 1, 1890, for the purpose of obtaining money to build a public school building within the said city.

Appellees, by answer, interposed in bar of the action a defense to the effect that these school bonds when issued and negotiated did not constitute an indebtedness of the city of Bluffton, but, upon the contrary, they constituted an indebtedness of the school city of Bluffton, a distinct and separate corporation from that of the civil city. The facts averred in this answer relative to these school bonds in brief are: On February 26, 1890, the trustees of the school city of Bluffton filed and presented to the common council of the city of Bluffton a report under oath, showing therein the necessity of constructing a public schoolhouse, the estimated cost of

which, as stated in said report, was $12,000, and that said trustees were without funds to construct said building.

In pursuance of this report, it appears, the common council adopted an ordinance authorizing bonds to be issued to the amount of $12,000 and provided therein for the sale of the same and that the money arising from such sale should be paid over to the school trustees upon their compliance with the provisions of §4489 R. S. 1881. The bonds were sold as provided, and the proceeds of their sale were turned over, as directed by the ordinance, to the school trustees and were used by them in constructing the schoolhouse mentioned in their report.

The ordinance passed by the common council of the city of Bluffton authorizing the issue and sale of the school bonds, it appears, prescribed the particular form in which they were to be executed, and the form so prescribed recited "that the school city of Bluffton, in the State of Indiana, hereby promises to pay to the bearer hereof," etc. At the close of this form appears a testimonial certificate wherein it is recited that the "city of Bluffton has caused these presents to be signed by its mayor and city clerk, under its corporate seal hereto attached, and also to be countersigned by the said school trustees, all in behalf of the said school city of Bluffton, this 1st day of April, 1890." It is alleged that the bonds were executed in accord with this prescribed form. The lower court on demurrer adjudged this answer sufficient.

The question raised for our decision by this appeal is this: In the determination of the question whether the aggregate indebtedness of the city of Bluffton, at the time of the issue and sale by it of its water-works bonds, had reached or exceeded the constitutional limit, must the $12,000, evidenced by the school bonds in controversy, be considered as a part of said city's indebtedness, or must these school bonds be excluded from such indebtedness and held to be an outstanding indebtedness of the school city of Bluffton?

This is the sole proposition presented and discussed by counsel for the respective parties. It is evident, under the facts, that, if these bonds constitute an indebtedness of the city of Bluffton, then the issue and sale of the water-works bonds would swell its aggregate indebtedness to an amount in excess of the constitutional limit. This is the first time, we believe, that the precise question, as now involved, has been before this court. It cannot be successfully controverted but what the legislature of this State, if it deems proper, may empower school corporations of cities and towns to issue and sell their bonds in order to raise money to construct schoolhouses, etc., and in this manner create an indebtedness upon the part of such school corporations, for which they alone would be liable. But that is not the question with which we have to deal, but the one which confronts us is: Has the legislature conferred this extraordinary power upon school corporations of a city organized under the general laws of the State, like the city of Bluffton? Neither can it be said that the question, as to whether a civil city or town, and a school city or town, in view of the constitutional inhibition, may each become indebted to the amount of two per cent. upon the value of its taxables, is necessarily involved in this case; hence, as to this question, we need intimate no opinion.

By the school law of 1865 it was declared that, "Each civil township and each incorporated town or city in the several counties of the State is hereby declared a distinct municipal corporation for school purposes, by the name and style of the civil township, town or city corporation respectively, and by such name may contract and be contracted with, sue and be sued, in any court having competent jurisdiction; and the trustees of such township, and the trustees provided for in the next section of this act, shall, for their township, town or city, be school trustees, and perform the duties of clerk and treasurer for school purposes." §§4438 R. S. 1881, §5914 Burns 1894, §4438 Horner 1897. These particular school cities and towns are not voluntary corporations but

are arbitrarily created by legislative fiat for school and educational purposes, and their powers depend upon laws enacted by the legislature relative thereto, and they are entrusted only with such limited powers as that body has deemed necessary to carry out the purposes for which they were created. *Freel* v. *School City of Crawfordsville*, 142 Ind. 27, 37 L. R. A. 301. It has been frequently decided by this court that such school corporations must be considered a separate and distinct legal entity from that of the civil town or city in which they have their existence, and that the civil city or town and the school city thereof is each, under the law, entitled to its own rights and subject to its own liabilities. The question, however, as here involved, depends in the main upon the interpretation of an act of the legislature approved March 8, 1873 (Acts 1873, p. 60), which is entitled: "An act to authorize cities and towns to negotiate and sell bonds to procure means with which to erect and complete unfinished school buildings, and to purchase any ground and building for school purposes, and to pay debts contracted for such erection and completion, and purchase of buildings and grounds, and authorizing the levy and collection of an additional special school tax for the payment of such bonds."

The first, second, and third sections of this act are embraced, in the order stated, in §§4488, 4489, 4490 R. S. 1881, §§5975, 5976, 5977 Burns 1894, and §§4488, 4489, 4490 Horner 1897, the latter section now existing as amended by the act of 1875. The first section of this statute provides as follows: "Any city or incorporated town in this State which shall, by the action of its school trustees, have purchased any ground and building or buildings; or may hereafter purchase any ground and building or buildings; or has commenced, or may hereafter commence, the erection of any building or buildings for school purposes; or which shall have, by its school trustees, contracted any debts for the erection of such building or buildings, or the purchase of such ground and building or buildings; or such trustees shall not

have the necessary means with which to complete such building or buildings, or to pay for the purchase of such ground and building or buildings, or pay such debt—may, on the filing by the school trustees of said city or town of a report, under oath, with the common council of such city, or the board of trustees of such town, showing the estimated or actual cost of any such ground and building or buildings, or the amount required to complete such building or buildings, or purchase such ground and building or buildings, or the amount of such debt, on the passage of an ordinance authorizing the same by the common council of said city or the board of trustees of such town, issue the bonds of such city or town to an amount not exceeding in the aggregate fifty thousand dollars, in denominations not less than one hundred nor more than one thousand dollars and payable at any place that may be designated in the bonds (the principal in not less than one year nor more than twenty years after the date of such bonds, and the interest annually or semi-annually, as may be therein provided) to provide the means with which to complete such building or buildings, or to pay for the purchase of such ground and building or buildings, and to pay such debt.    Such common council or board of trustees may, from time to time, negotiate and sell as many of such bonds as may be necessary for such purpose, in any place and for the best price that can be obtained therefor in cash:    *Provided,* That such bonds shall not be sold at a price less than ninety-four cents on the dollar."

The second section provides that the proceeds of the sale of such bonds shall be paid to the school trustees, to enable them to erect or complete such building or buildings, and pay such debt, and requires of the school trustees a bond conditioned for the faithful and honest application of the money to the purpose for which the same was provided.

The third section authorizes and requires the common council of such cities, and the board of trustees of towns, availing themselves of the provisions of the act, to levy an-

nually an additional tax to pay the interest and principal of the bonds, and directs that the treasurer of the city or town shall keep an accurate account of the revenue arising out of such special tax, and that he shall pay out the same only upon the authority of the common council of the city or the board of trustees of the town, and that he shall permit the money so derived to be applied to no other purpose than the payment of the principal and interest of such bonds, etc.

In 1879 the legislature deemed it proper further to restrict school trustees of cities and towns, and therefore denied them the right to purchase any ground for school purposes or to enter into any contract for constructing any school building until they had first secured the permission of the board of trustees of the town or the common council of the city.    §4491 R. S. 1881, §5978 Burns 1894, §4491 Horner 1897.

While the legislature, in the furtherance of educational purposes, has considered it essential to create these school corporations, which the law views as of an inferior grade, still it has deemed it judicious to confer upon them absolutely no powers of an extraordinary character, and has materially restricted them in the exercise of such with which they have been expressly invested.    It is not necessary, however, to the determination of the question presented by this appeal, that we enter upon a review of the many decisions of this court relating to the authority of the trustee or trustees of the school corporation to contract debts on its behalf.    It is sufficient to say that while the force or effect of the decisions of this court is to deny that school trustees, under the law, have any express power or right to borrow money, still it is true that our decisions do recognize and uphold their right or power to bind the corporations which they represent by promissory notes or other written obligations for the payment in the future of a valid preëxisting indebtedness, or for the repayment of money advanced to such trustees which they have

actually and rightfully expended for the use and benefit of the school corporation.

The contention of counsel for appellees proceeds upon the theory asserted, that, inasmuch as the civil city or town is not empowered by the laws of the State to purchase ground or erect buildings for school purposes, and as all schoolhouses constructed within the limits of an incorporated city are the sole and exclusive property of the school corporation, and not that of the corporation represented by the civil city, therefore it is insisted that the act of 1873, *supra*, does not contemplate that the bonds authorized to be issued thereunder shall be those of the civil city. Counsel affirm that the city, the bonds of which are to be issued as mentioned in this statute, is meant and intended to be the school city and not the civil city, and that the bonds shall be issued as the obligations alone of the school city for the payment of which it will be liable. Or, in other words, it is said that whatever is done by the common council of the civil city, under the provisions of this statute, in relation to the issuing and sale of such bonds, is performed by such council as an agency of the school city, and therefore cannot have the effect of making such bonds an indebtedness of the civil city. This contention is not tenable.

It may be conceded that the draftsman of this statute omitted to make, or properly recognize the correct distinctions between the two particular corporations, each of which embraces, as we have seen, the same territory. By the use of the words, "Any city or incorporated town * * * which shall by the action of its school trustees have purchased any ground * * * or commenced * * * the erection of any building for school purposes, or which shall have by its school trustees contracted any debts" etc., the statute is made to ascribe to the civil city the performance of acts which the law has assigned to and placed under the jurisdiction of the board of school trustees, and thereby the act apparently confuses the powers of the school trustees with those of the civil city.

Nevertheless, when its provisions as an entirety are read and construed together, and the words therein employed given their ordinary and proper signification, its meaning, we think, in respect to the city authorized to issue the bonds, becomes obvious.

By making an immaterial change in the grammatical construction of that part of the first section of this statute by which authority to issue and sell bonds is granted, it may be read as follows: "Any city or incorporated town in this State * * * on the filing by the school trustees of said city * * * of a report under oath with the common council of such city showing the estimate or actual cost * * * may, on the passage of an ordinance authorizing the same by the common council of said city * * * issue the bonds of such city to an amount not exceeding in the aggregate $50,000. Such common council may from time to time negotiate and sell as many of such bonds as may be necessary for such purposes" etc.

The bonds are authorized to be issued under an ordinance adopted by the common council, and they are denominated by the statute as "*The bonds of such city.*" The phrase "such city," under the circumstances, certainly cannot be interpreted to signify or mean any other city than the civil city, which is under the jurisdiction of the common council, by the authority of whose ordinance provisions are made for the issue and sale of the bonds. It cannot reasonably be interpreted to mean the school city as the latter does not exercise its powers by a body denominated the common council, but acts through, and is under the jurisdiction of another and different body known as the board of school trustees.

That the statute in controversy contemplates or intends that these bonds, when negotiated in pursuance thereof, shall become the obligations of the civil city, is made more evident when the provisions of the third section of the act are considered. It is therein provided, as heretofore stated, that in addition to the taxes levied by cities and incorporated towns

for general purposes "the common council of any such city and the board of trustees of any such incorporated towns, as shall avail themselves of this act, are hereby authorized and required to levy annually a special, additional tax."

This section then provides that these taxes, when collected by the city or town treasurers, are to be applied by these officials to the payment of the interest and principal of such bonds. In this manner, the legislature has given express authority to the civil city or town, and required it to levy and collect taxes and apply the same to the payment of the bonds. If the statute contemplates that the bonds, when issued, are to be those of the school city, it would seem strange that the duty of raising a fund to provide for their payment should be imposed, as it is, upon the civil city.

A well settled rule, relative to the construction and interpretation of a statute is, that, in case of ambiguity in its provisions, the title thereof may be consulted to aid in its interpretation. Especially is this rule applicable in this jurisdiction, as our Constitution provides that the subject of every act shall be expressed in its title and thereby the latter becomes a part of the act and is a material guide in discerning its true intent and proper application as designed by its makers. *Dodd* v. *State*, 18 Ind. 56, 23 Am. & Eng. Ency. of Law, p. 329. If we resort to the title of the act of 1873 to aid us in determining where to place the liability of bonds issued thereunder, we find that the title declares it to be "An act to authorize cities and towns to negotiate and sell bonds * * * and authorizing * * * an additional special school tax for the payment of such bonds."

If it were conceded that, under the provisions of this statute, an ambiguity exists as to which of the two corporations the outstanding indebtedness, as evidenced by such bonds, must be assigned, and as to which of the two must be held liable for their payment, then and in that event, we think, its title would, when considered along with the provisions of the act, fully disclose the legislative intent and make evident

the fact that the law intended that such bonds were to be issued and negotiated by the civil town or city, and thereby become its obligations.

In determining as to which of these corporations the indebtedness, evidenced by the bonds, must be assigned, an examination of some of the decisions of the higher courts of this State will be profitable, in order to learn how these school bonds have been considered and treated by such courts in the past. In *Williams* v. *Town of Albion*, 58 Ind. 329, decided over twenty-one years ago, the action was instituted and successfully prosecuted to enjoin the civil town of Albion from issuing and negotiating its school bonds. The question, as there involved, related to the power of the civil town, under the law of 1873, *supra*, to issue and sell the bonds sought to be enjoined. That case discloses that the school trustees had reported to the town's board of trustees the necessity for the purchase of a site and the erection of a school building thereon, etc. This court, in passing upon the right or power of the town, under the circumstances in that case, to issue the bonds in controversy, said: "When the power is clearly granted to a municipal corporation to do an act, a court cannot interfere with the exercise of its ordained or administrative discretion in carrying out the power granted. The amount of bonds proposed to be issued is the same as the debt already incurred, and the estimated cost of the schoolhouse; and we think the town of Albion, to this extent, has the power to issue the bonds."

In the appeal of *Reed* v. *Town of Orleans*, 1 Ind. App. 25, it was held by that court that the civil town was liable to a broker for his services in selling the school bonds issued by such town.

In the case of *Town of Winamac* v. *Huddleston*, 132 Ind. 217, the board of trustees of the civil town had, by an ordinance, authorized it to issue and negotiate school bonds to obtain funds with which to build a schoolhouse destroyed by fire. A taxpayer of the town brought the action to enjoin

the issue and sale of the bonds on the ground that they would create, if issued and negotiated, an indebtedness against the civil town in excess of the constitutional limit. The plaintiff prevailed in the lower court and this judgment was affirmed on appeal. Elliott, J., speaking as the organ of this court in that case, said: "The bonds, if issued, will create a debt in excess of two per centum of the taxable value of the property within the corporate limits of the town. There can be no doubt that if the bonds are executed as proposed, and are of any validity, they will create a debt against the public corporation. In this particular, as in others, this case is radically different from that of *City of Valparaiso* v. *Gardner*, 97 Ind. 1. The debt created by a bond executed by a public corporation is not an obligation payable out of specific funds, but is a contract to pay money generally, and hence this case is not within the doctrine of such cases as *Quill* v. *City of Indianapolis*, 124 Ind. 292, 7 L. R. A. 681; *Strieb* v. *Cox*, 111 Ind. 299; *Board, etc.*, v. *Hill*, 115 Ind. 316. * * * We can see no possible reason for holding that bonds issued to build a schoolhouse are not within the constitutional provision quoted, nor can we conceive of any reason upon which it can be held that because there is a provision or promise to levy taxes to pay the bonds the constitutional provision does not apply."

The precise question, as involved in the case at bar, it seems was not raised in the case last cited, still the latter is of much force in showing that the bonds assailed in that action were regarded and treated by this court as creating an indebtedness against the civil town of Winamac. In fact, the three cases last cited disclose that the higher courts of this State, for a long period of time, have treated these bonds as a liability or indebtedness of the civil corporation and not a liability or indebtedness existing against the school corporation. And not until now, so far as we are aware, has the question here involved been mooted in our courts. The fact that such bonds have been, impliedly at least, considered and

treated by the judiciary as the obligations of the civil town or city, and this view accepted and acquiesced in by the officials of the towns and cities concerned in their issue and payment, for so long a period of time, might be accepted by a court in case a doubt arose as to the proper construction to be placed upon the provisions of the statute, as a practical exposition or interpretation of its meaning or intention. *French* v. *State*, 141 Ind. 618, 29 L. R. A. 113, and authorities there cited.

By §4457 R. S. 1881, and Horner 1897, and sections following, the legislature has lodged the control of the educational affairs of school corporations in cities of over 30,000, in a board of school commissioners, and by the eighth clause of §4460 R. S. 1881, and Horner 1897, has expressly empowered such boards to issue and sell bonds in order to secure loans of money. In the case of *Fatout* v. *Board, etc.*, 102 Ind. 223, in construing the powers of such boards, under said clause eight, this court, in the course of the opinion, on page 231, said: "We think it was the manifest intention of the legislature, in and by the *eighth* clause of such section, to give such board of school commissioners an additional and extraordinary power, not conferred upon school corporations generally." In that case, we have the express declaration of this court to the effect that the extraordinary power conferred by the legislature upon these boards of commissioners to issue and negotiate bonds to secure a loan of money, is not conferred upon a school corporation of a city like Bluffton, having a population under 30,000.

Conceding that the indebtedness contracted in the first instance by the school trustees must be regarded as that of the school corporation, and that, by reason of its receiving the money arising from the sale of such bonds, to be applied upon such indebtedness, it must be deemed the beneficiary, nevertheless, this will not prevent the indebtedness, evidenced by the bonds, from being in a legal sense considered as that of the civil corporation, nor prevent the existence of the relation

of creditor and debtor between the latter corporation and the holder of the bonds.

It is certainly manifest that if A secures a loan of money from B and executes his note or bond to the latter for the same, and then turns over the money so borrowed to C, the indebtedness evidenced by the note or bond is A's, and not C's. A debt in a general sense arises out of an express or implied promise made by one person to another to pay a sum of money. Anderson's Law Dictionary, p. 315.

In *Quill* v. *City of Indianapolis*, 124 Ind. 292, 7 L. R. A. 681, this court, in considering the question as to whether certain street-improvement bonds created an indebtedness against the city of Indianapolis, said *per* Mitchell, J.: "An indebtedness can not arise unless there is either a legal, equitable or moral obligation to pay a sum of money to another, who occupies the relation of creditor, and who has a legal or moral right to call upon or constrain the debtor to pay. *State* v. *Hawes*, 112 Ind. 323. It is not always essential, in order to the existence of an indebtedness, that there should be an absolute legal right to coerce payment, as in that sense the State could never become indebted. *Mayor, etc.,* v. *Gill*, 31 Md. 375. It is, however, essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitles the holder thereof unconditionally to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay, without regard to any future contingency."

The bonds in the case at bar, as we have seen, were signed by the mayor and clerk of the civil city, and the seal of the latter was attached thereto. In the body thereof, however, the school city is made to appear as a promisor, and each bond is countersigned by the school trustees.

It is insisted by counsel for appellees, that, by reason of their being so executed, they ought to be held to be the bonds of the school city and not of the civil. There is no merit or force in this contention. The fact that the name of the

Wilcoxon *v.* City of Bluffton.

school city was inserted in these bonds as the promisor, will be deemed, under the circumstances, to be a mere irregularity in their execution, and is not available to make them the bonds of the school corporation. The latter, under the circumstances as we have seen, was not empowered by law to enter into, or bind itself by such obligations. The law, if necessary, will read into the bonds the name of the proper and legitimate promisor and will ascribe the indebtedness, evidenced thereby, to the civil city which alone, under the law, was authorized to execute them.

The school bonds in controversy must be held to be an outstanding indebtedness against the civil city of Bluffton, and they must be taken into consideration in ascertaining the aggregate indebtedness of that municipality. This holding results in a reversal of the judgment. The judgment is therefore reversed, and the cause ordered to be remanded to the lower court for further proceedings.

Monks and Dowling, JJ., concur in the result. Baker, J., dissents.

## Dissenting Opinion.

Baker, J.—I am constrained to dissent from the decision. Particularly am I unable to yield my assent to the processes by which the result is reached. Irrespective of what may be presented as to the logicalness of the opinion of the majority from the premises taken, I can not but believe that, if other facts that lie at the root of the matter are added to the view, and if the facts that do enter into the determination of the majority are more thoroughly circumspected, a different conclusion is inevitable.

The statute prescribing that "each civil township and each incorporated town or city in the several counties of the State is hereby declared a distinct municipal corporation for school purposes, by the name and style of the civil township, town or city corporation respectively, and by such name may contract and be contracted with, sue and be sued, in any court

having competent jurisdiction," came into force on March 6, 1865. §4438 R. S. 1881, §5914 Burns 1894, §4428 Horner 1897.

Was it competent for our legislature so to ordain? It is fundamental that our State is sovereign in its own affairs; that the whole legislative function of our State is reposed in the General Assembly; that the presumption is that all of its enactments are valid laws; that one who asserts the invalidity of an act of our General Assembly must point out the very line and letter wherein our people, by their Constitution, have restricted its otherwise sovereign legislative power. Our Constitution contains no limitation against the erection of municipal corporations by general law. Article eight expressly directs the legislature to provide by law for a general system for the support and management of common schools and the investment and distribution of the separate funds for school purposes therein mentioned. It was therefore purely a matter of legislative discretion to erect the "distinct municipal corporation for school purposes", although it extended over the same or substantially the same territory occupied by other municipal or political corporations.

An inhabitant of any particular territory may owe support and tribute to several municipal and political corporations at the same time. To the State, the county, the civil township, the school township, the civil city or town, and the school city or town,—to whatever political or municipal corporation he belongs,—he must pay to each his share of its lawful expenses and debts. And he can not be permitted, under article 13 of our Constitution, to enjoin any political or municipal corporation of which he is a member from becoming indebted to the extent of two per centum of the value of its taxables on the ground that the aggregate of the indebtedness of two or more of the corporations to which he must pay taxes already exceeds the two per centum.

What is the character of the "distinct municipal corporation for school purposes"?

Wilcoxon *v.* City of Bluffton.

"The two municipal corporations, however, the township and the school township, the city and school city, or the town and school town, are as distinct and separate legal entities as if they existed in different territory, and had an entirely different set of officers. * * * There being two distinct corporations, each having its own rights and being subject to its own liabilities, it follows that an action will not lie against the one for the debts or liabilities of the other. And, on legal principles, this would seem to be the case as clearly·as if the two corporations existed in different territory, and were supplied with entirely different officers. The two corporations are as distinct legal personages as if they had no connection in any way with each other." *Utica Township* v. *Miller,* 62 Ind. 230, and cases cited; *Carmichael* v. *Lawrence,* 47 Ind. 554; *McLaughlin* v. *Shelby Tp.,* 52 Ind. 114; *Sims* v. *McClure,* 52 Ind. 267; *City of Huntington* v. *Day,* 55 Ind. 7; *Town of Noblesville* v. *McFarland,* 57 Ind. 335; *Greensboro Tp.* v. *Cook,* 58 Ind. 139; *Harrison Tp.* v. *McGregor,* 67 Ind. 380; *Hornby* v. *State,* 69 Ind. 102; *State* v. *City of Terre Haute,* 87 Ind. 212; *Fatout* v. *Board, etc.,* 102 Ind. 223, 230; *Middleton* v. *Greeson,* 106 Ind. 18; *Jarvis* v. *Robertson,* 126 Ind. 281; *Braden* v. *Leibenguth,* 126 Ind. 336. See, also, *Winspear* v. *District Township of Holman,* 37 Ia. 542, and *Curry* v. *District Township of Sioux City,* 62 Ia. 102, 17 N. E. 191.

The school corporation has exclusive charge of educational affairs within its territory, such as the employment of teachers, the establishment and location of schools, the building or providing of schoolhouses; has the exclusive title, care and management of all property, real and personal, pertaining to ·schools; has power to condemn real estate for school purposes; has authority to contract and be contracted with, sue and be sued, in respect to any matter within the purview of the statute creating it; has its own separate funds and revenues; levies its own special taxes; has authority to pay its own expenses and debts with its own moneys. See the appro-

priate sections of chapter 56 R. S. 1881. From these expressly granted powers, necessarily flows the right to issue written evidences of debt and promissory notes for the repayment of money received by the school corporation and used by it for school purposes. *Sheffield School Tp.* v. *Andress*, 56 Ind. 157; *School Town of Monticello* v. *Kendall*, 72 Ind. 91, 37 Am. Rep. 139; *Wallis* v. *Johnson School Tp.*, 75 Ind. 368; *Johnson School Tp.* v. *Citizens Bank*, 81 Ind. 515.

This "distinct municipal corporation for school purposes" is found, therefore, to have the same quality of power as have the other political and municipal corporations erected or authorized by our laws. Their powers, each and all, depend upon laws enacted by the legislature relative thereto, and they are entrusted only with such limited powers as that body has deemed necessary to enable them to carry out the purposes for which they were created. The fact that the county, the civil township, the school township and the school city or town on the one hand are involuntary corporations arbitrarily created by legislative fiat, and that the civil city and town on the other are voluntary corporations organized under legislative permission, can make no difference in the quality of power; for each derives its limited power in the same manner and from the same source,—from the legislature, by enactment. Nor can the quality of power be conditioned in any way upon the personnel employed. For State officers, by title, collect and pay over to school corporations money that belongs to and is expended by them; and county officers, by title, perform acts for the State, for townships, for cities and towns, as well as for the county. Township trustees may not act in certain cases without the concurrent action of officers that are county officers by title; yet the suggestion is never made that the act, when done, is the act of the county and not of the township. In the present case, the co-appellee of the city of Bluffton is B. F. Kain, county treasurer of Wells county; yet the suggestion will not be made that the

money which he collects and pays according to statute, and which comes from taxes levied by Bluffton for its own purposes on its own taxables, is the property of the county and not the city. Nor can the quality of power be dependent in any way upon the objects to which the power pertains. Inferiority of the corporation can not well be measured between the county in building bridges, the school city in erecting schoolhouses, and the civil city in constructing sewers.

What is the name of the "distinct municipal corporation for school purposes"?

The section that creates this distinct and separate corporation expressly declares that it shall be known "by the name and style of" the civil township, town or city corporation respectively, "and by such name may contract and be contracted with, sue and be sued". Lawyers and courts have built up the practice of distinguishing between the two city or town corporations of the same name by putting the word "school" before the legal name of the city or town corporation for school purposes. It can easily be seen how, under this act of 1865, the practice naturally arose, by considering the first section of an act approved March 3, 1859, Acts 1859 p. 181, §4437 R. S. 1881, §5913 Burns 1894, §4437 Horner 1897, which has continued in force to the present: "Each and every township that now is or may hereafter be organized in any county in this State is hereby also declared to be a school township, and, as such, to be a body politic and corporate by the name and style of '————school township of————county', according to the name of the township and of the county in which the same may be organized; and, by such name, may contract and be contracted with, sue and be sued in any court having competent jurisdiction". An earlier act at the same session, §4 of an act approved February 18, 1859, Acts 1859 p. 220, §5990 R. S. 1881, §8065 Burns 1894, §5990 Horner 1897, expressly gave a different name to the civil township by providing that "Each and every township that now is or may hereafter be organized in any

county in this State is hereby declared a body politic and corporate, by the name and style of '————township of———— county', according to the name of the township and county in which the same may be organized; and, by such name, may · contract and be contracted with, sue and be sued in any court having competent jurisdiction". So, in the case of the separate and distinct township corporations for civil and for school purposes, the creative acts expressly gave them separate and distinct names; but in the case of the separate and distinct city or town corporations for civil and for school purposes, the creative acts expressly gave them the same name. In the case of *McLaughlin* v. *Shelby Tp.*, 52 Ind. 114, the two sections of the acts of 1859 and the section of the act of 1865 were considered with reference to the names of the two township corporations. It was held that the name of the civil township was "Shelby Township of Jefferson County"; that the name of the school township was "Shelby School Township of Jefferson County"; that there is "nothing in this act [of 1865] that changes the name of the school townships as provided for in the act previously noticed"; and that "Shelby Township" had no authority in matters connected with "school purposes". In the case of *Town of Noblesville* v. *McFarland*, 57 Ind. 335, "The Town of Noblesville was sued by a school teacher for damages for breach of a contract of employment. From a judgment for plaintiff, an appeal was taken. The point was urged that the wrong corporation was sued. After the caption, the complaint proceeded: "The plaintiff complains of the defendant and says that said defendant is a school corporation, duly organized under and pursuant to the laws of the State of Indiana, by the corporate name of The Town of Noblesville. * ·* * that * * * she was employed by * * * the board of school trustees for said corporation", etc. The court said: "We think the complaint is good. It shows very clearly, by its allegations and averments, that 'The Town of Noblesville' is sued in its character of a school corporation. 'The Town of No-

blesville' is the name of the civil corporation, and the statute declares that every such incorporated town shall be a 'municipal corporation for school purposes, by the name and style of the civil  *  *  *  town,  *  *  *  and by such name may contract and be contracted with', etc.   But it is necessary in contracting, and in suing and being sued, that the character in which it is acting and being acted upon should be shown. The above section of the statute, it may be observed, is the one governing this case.   *McLaughlin* v. *Shelby Tp.*, 52 Ind. 114.   There are, we think, two modes in which this character, as above mentioned, may be shown: 1.   By designating the character, by prefixing an adjective to the name, as 'The School Town of Noblesville'; 2.   By averments in the complaint, such as are made in this, that it contracted, and is suing or being sued, in its character of a school corporation, by its corporate name.   In such case, the judgment and its execution would follow the averments in the complaint and be governed thereby.   The cases in our reports authorize the inference that either of the modes we have suggested will suffice.   In addition to the one cited above, see *Jackson Tp.* v. *Barnes*, 55 Ind. 136; *City of Huntington* v. *Day*, 55 Ind. 7.   The case is very like that of *City of Crawfordsville* v. *Hays*, 42 Ind. 200.  *  *  * The judgment is affirmed, with five per cent. damages and costs, as due against the school town, and to be collected from its funds."   So, in later cases, for example, *School Town of Leesburg* v. *Plain School Tp.*, 86 Ind. 582, and *School Township of Allen* v. *School Town of Macy*, 109 Ind. 559, it is found that the suggestion of the court, which was made in 1877, over four years after the schoolhouse bond law of 1873 was passed, has been followed.   But the legal name of the city or town corporation for school purposes has remained throughout and now is the very identical name of the city or town corporation for civil purposes.   The practice of adding descriptive adjectives does not make them parts of the legal names any more than would the descriptive adjectives in

"Long Jones" and "Short Jones" become by use parts of the legal names.   If in Wells county there is a John Smith in Washington township and a John Smith in Jefferson township, ordinary precaution on the part of the lawyers and court would make it proper practice, in case the latter is sued, to describe him in the caption and body of the complaint as "John Smith of Jefferson township", so that, as the court said in the Noblesville case, "the judgment and its execution would follow the averments in the complaint and be governed thereby".

These statutes of 1859 and 1865 were on the books and in force when the legislature met in 1873.   That legislature enacted the schoolhouse bond law, which is the subject of construction in this appeal.   Three days later, March 11, 1873, an act was approved in relation to township trustees. Acts 1873, p. 209, §4471 R. S. 1881, §5957 Burns 1894, §4471 Horner 1897.   Of that act, this court said in the case of *Middleton* v. *Greeson*, 106 Ind. 18, on pp. 25-6:   "In 1873 the legislature passed an act, entitled an act to authorize *township trustees* to levy an additional tax for the purpose of paying, satisfying and liquidating debts made and contracted by *such trustees*, in constructing, repairing or completing schoolhouses, etc.   The act followed the title.   In the act, the words *township trustees* and *such trustees* are used as in the title.   The words 'school trustees', or 'trustees of the school township' are not used at all.   Here, it is apparent that debts had been contracted for the building, etc., of schoolhouses. These debts must have been contracted by township trustees, acting as trustees of the school townships.   They could not have contracted them as the trustees of the civil townships.   Nor could they, as trustees of the civil townships, levy the additional tax authorized.   That could only be done by them acting as the trustees of the school townships".   This construction is correct.   By what principle was the court guided in its interpretation?   By the principle that the corporation intended must be determined to

be that corporation which exclusively has control of the subject-matter indicated in the body of the act, regardless of the question whether or not the exclusive control is exercised by agents exclusively its own or by agents who act for some other corporation also and who bear titles that indicate exclusive action for the other corporation. In the township case, the two township corporations have separate and distinct names by law, and it affirmatively appears that the wrong corporation was named in the act; yet the right interpretation was easily made. In the city case, the two city corporations bear the same name by law. How much easier, therefore, ought it to be to apply the same principle!

Of what is the "distinct municipal corporation for school purposes" composed?

In the conception of a municipal corporation are involved a definite territory and the inhabitants thereof. A civil city is made up of the territory and inhabitants within its geographical limits. A school city comprises the same territory and people with the addition of all persons (and their property) who have voluntarily become members agreeably to the statute. §§4473-4 R. S. 1881, §§5959-60 Burns 1894, §§4473-4 Horner 1897. These persons have the same rights and interests in the school city as have those who are involuntary members of the school city, and their property is subject to all taxes of the school city. It is comprehensible how they are legally bound by authorized acts of the school city done through its agents, no matter what the title of the agents may be; it is inconceivable how they may be legally bound by an act of the civil city to which they in no wise belong.

In coming to a reading of the schoolhouse bond act of 1873, there should also be borne in mind the long and uniform line of decisions holding that a civil municipal corporation can not make contracts in reference to school property or affairs, nor incur indebtedness for school purposes. See authorities collated under the discussion of the "character" of

the school corporation. Extracts from a few will sufficiently illustrate the cases. In the *City of Huntington* v. *Day*, 55 Ind. on p. 8, the court declared that the civil city "has nothing to do with the erection of schoolhouses, either within its own limits or elsewhere, and hence can not be made liable for any services performed in building them". The civil city of Terre Haute undertook to buy a lot for school purposes, and it gave its notes for the purchase price. *State* v. *City of Terre Haute*, 87 Ind. 212. On page 213: "Counsel for the appellee insist that the city had no power to make the alleged purchase, nor to bind itself by promissory notes for the purchase price; that the school corporation of the city, which is a distinct legal entity, alone had power to make the purchase, to give the notes and to *levy the taxes* necessary for their payment. This view seems to be in accord with the statutes and with the decisions of this court", citing the statutes and decisions. In *Hornby, Tr.,* v. *State, ex rel.,* 69 Ind. on page 104, it was decided that the civil township has not the power, under the law, "to build schoolhouses or contract for the building thereof"; that the civil corporation and the school corporation "are distinct municipal corporations"; and that within its territory "the powers, rights and franchises of the school corporation are *supreme* and *exclusive* over its schoolhouses and other school property and over its *school revenues* both for tuition and for *special purposes*. In connection with these matters, neither the civil corporation nor *its trustee, as such,* has by law any duty to perform, nor under the law any power or authority to act in the premises". Yet the appellant in the present case seeks to have a construction placed upon the schoolhouse bond act by which a civil corporation is made to assume and pay the debts of another corporation, as distinct and separate from the civil corporation as if they were in different counties.

It is noteworthy that the act of 1873 was incorporated in the authorized revision of 1881 as a part of chapter 56. This chapter is made up solely of matters pertaining to the reve-

nues, debts, support and management of our common schools; and these matters can be found only in that chapter. And our decisions have consistently held that in these matters the powers, rights and franchises of the school corporation are supreme and exclusive; and that, in connection with these matters neither the civil corporation nor any of its officers, as officers of the civil corporation, has by law any duty to perform, nor under the law any power or authority to act in the premises. Matters relating to the revenues, debts, support and management of civil corporations were embodied in different chapters,—chapters 23, 24 and 25 as to civil cities and towns, and article 33 of chapter 99 as to civil townships.

Article 6 of chapter 56 is entitled: "Schools in Cities and Towns", and is composed of the first and second sections of the act of 1873; and the third section as amended in 1875; and a section of an act of 1879 requiring trustees of school towns and cities, before buying ground for schoolhouses, to secure the approval of the trustees of the civil town and the common council of the civil city; and a section of an act of 1879 directing that any surplus special school revenue, not necessary to meet current expenses, be applied for the payment of the interest or principal, or both, of any indebtedness incurred under the first section of the schoolhouse bond act of 1873.

In coming to a reading of the act of 1873, it should also not be lost sight of that article 13 of our Constitution was not adopted until March 14, 1881. The question presented by the appellant could not have been raised under the act of 1873 until after the adoption of that amendment. The amendment reads: "No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an extent in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount,

given by such corporation shall be void". The legislature in passing, and the people in voting upon, this amendment must be presumed to have had in mind the political and municipal corporations then existing, the power of the legislature to erect them, the acts of the legislature creating them and authorizing them to incur indebtedness, and the decisions of this court construing those enactments. The amendment necessarily recognizes that each political and each municipal corporation without distinction had the right up to that time to incur debts in carrying out the purposes of its creation and to give bonds or obligations therefor without limit except such as the legislature might choose to fix; and necessarily implies that each political and each municipal corporation without distinction, created by or organized under laws then in force (and they have not been changed), should have the right to incur indebtedness, under the laws of its creation, for its own purposes exclusively, not to exceed the two per cent. Under the act of 1873, at no time prior to March 14, 1881, could bonds for water-works built by a civil city have been defeated by showing a prior issue of bonds for a school-house built by a school city. Such a question simply could not have arisen. The bondholders, whose money paid for the water-works, would have recovered their money,—they would not have fallen between two stools. No shifting between the two corporations would have been possible. It is clear, therefore, that the legislators of 1873 can not be credited with the intention of enacting a law to grant a remedy to taxpayers of a civil city whereby they may prevent the purchase of material for crosswalks on credit by counting schoolhouse bonds as part of the civil city's present indebtedness.

The whole body of our statutory and case law, down to this time, has evidenced the idea that the legislature has intended to create a complete and consistent system for the government of school affairs, by which all of the powers, rights and franchises pertaining thereto have been vested in

corporations separate and distinct from all other political or municipal corporations. The school township may levy an additional tax to pay its debts. §4471 R. S. 1881, §5957 Burns 1894, §4471 Horner 1897. Under certain circumstances, the school township may issue its bonds. §§4514-16 R. S. 1881, §§6003-5 Burns 1894, §§4514-16 Horner 1897. The school city of 30,000 or more inhabitants makes its own contracts, has its own revenues, gives its notes for its own debts, and when bonds are issued to raise money for its purposes they are its bonds. §§4457-60 R. S. 1881, §§5936-9 Burns 1894, §§4457-60 Horner 1897. The school city of less than 30,000 inhabitants makes its own contracts, has its own revenues, gives its notes for its own debts, and when bonds are issued to raise money for its purposes the appellant contends they are the bonds of some one else. In *Lutz* v. *City of Crawfordsville*, 109 Ind. 466, 468, this court said: "If the legislature manifests an intention to create a system for the government of any subject, it is the duty of the court to effectuate that intention by such a construction as will make the system consistent in all its parts and uniform in its operation. It would violate all rules of logic, as well as settled principles of law, to dissect the system into parts and assign effect to each part irrespective of its effect upon the uniformity and consistency of the entire system. Statutes are to be construed as part of a uniform system, and such a scheme adopted as will give each part its appropriate place, and not destroy uniformity and harmony by cutting the system into disjointed and incongruous parts".

With all of these considerations in mind,—the statutes and decisions prior to March 14, 1881; the support and tribute owing by one inhabitant to several political and municipal corporations; the supreme and exclusive powers, rights and franchises of the "distinct municipal corporation for school purposes"; the fact that practically every other political or municipal corporation in the State, as well as the school corporation, exercises part of its own supreme and exclusive

powers, rights and franchises through the agency of officers who are ordinarily employed by, and whose official titles indicate their exclusive action on behalf of, some other political or municipal corporation; the distinction in the legal names of the township corporations for civil and for school purposes; the identicalness of the legal names of the city or town corporations for civil and for school purposes; the fact that the practice, now prevalent, of calling the city or town corporation for school purposes the "school city" or "school town" has never appeared in the statutes, and not in the reports until some years after 1873; the fact that at the same session in 1873 the legislature passed an act authorizing "townships" (the legal name of the civil corporations) by their trustees to levy an additional tax to pay debts incurred for school purposes, and this court held that the *function* plainly showed that the act applied, not to the corporations named, but to "school townships" (the legal name of the school corporation); the fact that the city corporation for school purposes may include persons and property over which the city corporation for civil purposes has no jurisdiction; the separate funds, revenues and taxes of the school corporation; the numerous and unvarying decisions holding that a school corporation may execute its obligations to pay for what it has received on credit; the numerous and unvarying decisions holding that the civil corporation can not be made liable for the debts of the school corporation; the embodiment, in the revision of 1881, of the schoolhouse bond act in the chapter on school corporations; the other statutory provisions in the same article of the chapter; the adoption of the constitutional limitation eight years after the passage of the bond act; the fact that the question in issue could not have arisen under the bond act at any time from its approval until 1881; the fact that the act in question is part of a complete legislative system for the government of school affairs; and the legal rules for construing statutes,—forgetting none of these, read the act of March 8, 1873. Read it as it stands, without in-

terpolation, without elision, without transposition of clauses. Read it, taking all the words in their ordinary meaning, and recalling that the legislature gave the same name to the civil and to the school city. Read it, conceding that the legislature expected its sentences to be analyzed according to the rules of grammar, and remembering that the only proper purpose in construing a constitutional act is to discover and execute the will of the legislature.

The title of the act is set out in the opinion of the majority. It begins: "An act to authorize cities and towns to negotiate and sell bonds". It is manifest that there is nothing in these words to indicate that the bonds are the obligations of the civil corporation, any more than of the school corporation, for the name of each is the same by statute. If that was all of the title, no one could tell from it which corporation was meant. But the title at once discloses the powers, rights and franchises to be exercised, and thus makes clear to a certainty the identity of the corporation intended. It proceeds and finishes: "—— to procure means with which to erect and complete unfinished school buildings, and to purchase any ground, and building for school purposes, and to pay debts contracted for such erection and completion, and purchase of building and grounds, and authorizing the levy and collection of an additional special school tax for the payment of such bonds." Every function in aid of which the act, according to the title, is passed, belongs exclusively to the school corporation; the property to be acquired is the school corporation's; the debts to pay which the bonds are issued are the exclusive debts of the school corporation; the debts to pay which the bonds are issued can not, according to a multitude of uniform decisions of this court, be shouldered off upon the civil corporation; the money with which the bonds are to be paid is exclusively the money of the school corporation, derived from its special school revenues. And yet appellant asks a construction of the act of 1873 by which the bonds, from the proceeds of which the civil corporation receives not one cent nor one

cent's benefit, and for the payment of which the revenues of the civil corporation are not at all diminished, shall be held to be an evil intended to be remedied by the constitutional amendment of 1881.

The first section of the act is set out in full in the majority opinion. Without any grammatical changes and transpositions, an analysis of the first sentence discloses that "any city or incorporated town in this State" is the subject, "may issue" is the predicate and "the bonds of such city or town" is the object. The bonds of such city or town, named in the *object*, are the bonds of the city or town, named in the *subject*, of which it is *predicated* that it may issue bonds. The adjective clauses, "which shall by the action of its school trustees have purchased any ground and building or buildings, or have commenced or may hereafter commence the erection of any building .or buildings for school purposes, or which shall have by its school trustees contracted any debts for the erection of such building or buildings, or the purchase of such ground and building or buildings, and such trustees shall not have the necessary means with which to complete such building or buildings, or to pay for the purchase of such ground and building or buildings, or pay such debt", define, point out, describe and name the *subject*. The adverbial clauses, "on the filing by the school trustees of said city or incorporated town, of a report under oath with the common council of such city, or the board of trustees of such town, showing the estimated or actual cost of any such ground and building or buildings, or the amount required to complete such building or buildings, or purchase such ground and building or buildings, or the amount of such debt, on the passage of an ordinance authorizing the same by the common council of said city, or the board of trustees of such town," modify and condition the *predicate*, point out the modes and conditions under which the verb-action may be taken. The vices of the majority reading, aside from leaving out of view considerations that go to the essence of the question, consist in sup-

pressing the adjective clauses which define and point out the school corporation as the subject; in taking from the predicate one of the adverbial clauses, thus leaving the verb-action conditioned only upon the passage of an ordinance; in putting the sundered adverbial clause in the place of the omitted adjective clauses; and in using the transposed adverbial clause as an adjective clause to denote and name the civil corporation as the subject.

There is but one other sentence in the first section: "Such common council or board of trustees may from time to time negotiate and sell as many of such bonds as may be necessary for such purpose," etc. If the first sentence of the section makes the bonds the obligations of the school corporation, and the common council in approving the issue of bonds the supervisory agents of the school corporation, it follows that in the sale of the bonds the common council continues to act on behalf of the school corporation. It is not true that the school city, so called, does not exercise any of its rights through the common council. It is one of the rights of a school city to have a board of school trustees. The civil city, in respect to its own rights and obligations, has no more concern with that right of the school city than it has with the rights of the county. But the common council elect the school board, not by virtue of any duty owing by them to the civil city, but by virtue of a duty to the school city, laid upon them by statute. The legislature had exactly the same power to require a common council, by title a body apparently elected to act solely for the civil city, to act for the school city, as it had to require a township trustee, by title an officer apparently elected to act solely for the civil township, to act for the school township. The school city is not authorized to purchase school sites without the approval of the common council. Yet the sites, when purchased, are paid for from the revenues of and belong exclusively to the school city. It was just as competent for the legislature to lay this duty on common councils on behalf of school cities, as it was for it to

impose upon county boards the duty to approve expenditures for the same purpose by trustees of school townships, or upon county boards to approve the extension of limits of civil cities, or upon county boards to authorize bonds of "gravel road districts", or upon courts to approve the expenditures of guardians. It is the ward's money that is protected, not the court's.

The second section is correctly epitomized in the majority opinion. This section shows that the entire proceeds of the bonds go to the school corporation for its own purposes.

The purport of the third section is stated with sufficient accuracy in the majority opinion, as far as it goes. Part of the section, however, was omitted, namely: "Persons residing outside of any such city or town and electing to be transferred to such town or city for educational purposes, or who shall send their children to the school taught in any such building, shall, with their property, be liable to such tax as if they resided in such city or town, on all property owned by said person in the township where such city or town is located". These persons are the same ones who, by §§4473-4 R. S. 1881, §§5959-60 Burns 1894, and §§4473-4 Horner 1897, become members of the school corporation and contribute to its regular income. These persons are not subject to taxes for the civil city's support. The tax provided for in this third section is the "additional special school tax for the payment of such bonds",as described in the title of the act. The answer in the present case explicitly avers that the school city of Bluffton includes persons and property that are not within the jurisdiction of the civil city of Bluffton.

In regard to the Albion case in 58th Indiana, the Orleans case in 1st Appellate, and the Winamac case in 132nd Indiana, it is sufficient to say that it is hardly fair to the courts as then constituted to infer that they impliedly ruled on a question that was not involved, nor raised by counsel or court.: In the Fatout case in 102nd Indiana, the question for decision was the power of a school city of 30,000 or more inhab-

itants to issue promissory notes for school purposes when it had outstanding school bonds to the full amount authorized, the notes and bonds together, however, not exceeding the two per cent. limit. It was decided that it had the power by virtue of its right to control and manage school affairs and to incur indebtedness therefor not exceeding in the aggregate two per cent. of its taxables. The only "extraordinary power" in respect to bond issues conferred upon school cities of 30,000 or more inhabitants that has not been given to school cities of fewer inhabitants, is the right to have its board of school commissioners make the bond issue without the concurrence or approval of any other set of officers. This is not a distinction in the power, or in the quality of it, but only in the mode of exercising it. And it will be seen that this distinction was a wise one for the legislature to make, if one stops to consider the scheme of our government and the continuously manifested policy of making all of our public officials answerable to their electors or nominors. In school cities of 30,000 or more inhabitants, the school commissioners are elected by the people, and in keeping with our policy they are answerable, in the exercise of their powers, only to the people who elected them. In school cities of less population, the school trustees are chosen by the common council, and in keeping with our policy their exercise of power must have the approval of their nominors.

To hold that the answer in the present case is bad, it is necessary to go beyond holding that the act of 1873 authorizes civil cities to issue schoolhouse bonds and that, if a civil city does issue schoolhouse bonds under the act, they must be counted a part of its indebtedness.

The answer avers: "These defendants say that under date of February 26, 1890, the trustees of the school city of Bluffton submitted and filed with the city council of the city of Bluffton a report and petition under oath, representing that the school buildings of the said city were altogether insufficient for its needs and that its best interests required the

erection of a school building therein at an estimated cost of $12,000 and that said trustees had no funds with which to erect such necessary and suitable building, and requesting the passage of an ordinance by the city council authorizing the erection of the needed building (§4491 R. S. 1881, §5978 Burns 1894, and §4491 Horner 1897) and the issue of school bonds (§4488 R. S. 1881, §5975 Burns 1894, and §4488 Horner 1897) in the sum of $12,000 in behalf of the school city of Bluffton to raise the necessary funds, that in pursuance of and as requested by the said school trustees, the common council of the city of Bluffton duly passed an ordinance, reciting the filing of the said report under oath of the said school trustees, showing the actual necessity for more school rooms and that the said school trustees could not erect and complete the necessary building without the expense and cost of $12,000 over and above the present revenues of the said school city which could be applied to that purpose, and ordaining and providing that bonds in behalf of said school city of Bluffton be issued to the amount of $12,000 and that the form of said bond should be as follows: Know all men by these presents that the School City of Bluffton in the State of Indiana hereby promises to pay to the bearer hereof on the first day of July ——, the sum of one thousand dollars, with interest at the rate of six per cent. per annum, payable upon presentation and surrender of the proper coupons, without relief from valuation laws. This bond is one of a series of twelve bonds of like tenor and amount and of even date herewith, aggregating the sum of $12,000, issued for the purpose of erecting a public school building within the said city of Bluffton. The issuance of this bond has been authorized by the common council of the city of Bluffton upon a report under oath by the school trustees of the school city of Bluffton as by statute required; and this bond is issued, and all proceedings relating thereto have been had in strict compliance with and in conformity to the laws and the Constitution of the State of In-

Wilcoxon *v.* City of Bluffton.

diana; and for the prompt payment hereof, both principal and interest, the full faith and credit of and resources of the said school city are hereby irrevocably pledged. In witness whereof the said city of Bluffton has caused these presents to be signed by its mayor and city clerk under its corporate seal hereto attached, and also to be countersigned by the said school trustees, all in behalf of the said school city of Bluffton, this first day of April, 1890."

These allegations show that the school trustees and the council carried through two proceedings at the same time: one, authorizing the erection of the building, under §4491 R. S. 1881, §5978 Burns 1894, and §4491 Horner 1897, Acts 1879 S. p. 86; the other, authorizing the issue of bonds to pay for the construction, under §4488 R. S. 1881, §5975 Burns 1894, and §4488 Horner 1897, Acts 1873 p. 60. In the first, there is no question but that the council was acting in behalf of and as an agency of the school city. In the second, it is unmistakable that the council intended to act in the same capacity.

If it were conceded that the act of 1873 did not authorize the school city to issue bonds, and did authorize the civil city to assume and pay the debts of the school city by issuing its own bonds, the answer can not be held bad without forcing the civil city to assume what, under the hypothesis, it had the legal right to assume but did not undertake to do. If the question had been presented to the common council that, instead of authorizing the school city to issue its own bonds, the civil city was assuming the school city's indebtedness so that the water-works bonds which it was about to issue for its own benefit would be void, the common council might have acted otherwise, and the school city might have given its promissory notes to the contractors or money lenders instead of petitioning the common council for permission to issue its own bonds. If the proceedings of the common council had shown that the civil city was undertaking to assume and pay the debts of the school city and make them its own, it is pre-

sumable that the persons who invested in the water-works bonds (and who are not parties to this case nor represented except by the answer of the civil city) might not have put their money in the hands of a municipal corporation that was already indebted, according to the hypothesis, beyond the constitutional limit.

If it were conceded that the legislature intended that the bonds provided for in the act of 1873 should be the bonds of the civil city, what about its constitutionality? Can the legislature authorize the officers of a municipal corporation to levy taxes with which to pay somebody else's debts? Can the legislature empower the officials of Elkhart county to levy taxes on the citizens thereof to provide for the debts of Marion county? That is the situation, unless the cloud of decisions of this court from the beginning to the present be overriden which hold that the school corporation and the civil corporation are just as distinct and separate legal entities as if they were in different counties and that the civil corporation can not be loaded down with the debts of the school corporation.

The question presented in this appeal is new and of very great importance, and its right solution is of vast concern to the municipalities and citizens of our State. The decision seems to me ill-considered.

The judgment should be affirmed.