Filed June 20, 1885.

———————◆———————

No. 12,219.

FATOUT v. THE BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS ET AL.

CITY.—School Commissioners in Cities of 30,000.—Powers of.—Statute Construed.—The 5th clause of section 4460, R. S. 1881, gives to boards of school commissioners in cities of 30,000 or more inhabitants, power to contract for the erection and completion of school-houses, and to agree to pay therefor partly in cash and partly on time, and to make and deliver their promissory notes for the deferred payments, which are valid obligations, and binding upon the school corporation, notwithstanding the fact that there may be at the time outstanding bonds to the amount of $100,000, issued and sold under the 8th clause of said section, to secure loans in anticipation of the revenue, for building school-houses, and that such money had been disbursed for that purpose.

SAME.—Discretion of Commissioners.—The powers conferred upon such board by the 5th clause of section 4460 are limited only by the educational wants of the school corporation under the board's control, in the exercise of a sound and reasonable discretion.

SAME.—The 8th clause of section 4460, R. S. 1881, was not intended to be and is not a limitation upon the general powers conferred upon the board of school commissioners by the 5th clause of such section. It

confers additional and extraordinary power not conferred upon school corporations generally, and the proviso therein contained is a limitation only upon the board's exercise of such additional and extraordinary power.

SAME.—*Promissory Notes.*—Promissory notes executed by such board of school commissioners, in settlement of its just debts fairly contracted for the legitimate purposes of the school corporation, do not come within the purview of the 8th clause of section 4460, R. S. 1881, or of the proviso thereof.

MECHANIC'S LIEN.—*School-House.*—*Public Policy.*—A mechanic's lien for work done, or for materials furnished, in the erection of a public school-house, can not be acquired or enforced. *Shattell* v. *Woodward*, 17 Ind. 225, overruled.

From the Marion Superior Court.

A. C. Harris, W. H. Calkins, F. Rand and J. M. Winter, for appellant.

R. B. Duncan, J. S. Duncan, C. W. Smith and J. R. Wilson, for appellees.

HOWK, J.—In this case the appellant Fatout sued the appellees, the Board of School Commissioners of the City of Indianapolis and the City of Indianapolis, in a complaint of two paragraphs. In the first paragraph the appellant declared upon a written agreement, executed by and between himself and such board of school commissioners, on the 26th day of March, 1884, for the erection and completion by him of a certain school-house of eight rooms, within such city of Indianapolis, in accordance with certain plans and specifications, in consideration of which such board of school commissioners were to pay the appellant the sum of $16,733 in cash, or, at their election, the sum of $16,983, payable one-half in cash, as the work progressed, and the residue in the notes of such board, to be executed upon the completion and acceptance of the school-house, and payable, with five per cent. interest, on July 1st, 1886. After setting out such agreement, in the first paragraph of his complaint, Fatout then alleged that he had fully kept and performed all the covenants and conditions of such agreement, on his part to

be kept and performed, and had fully erected and completed such school-house to the satisfaction and acceptance of such board of school commissioners; but that such board had not kept and performed all their covenants, mentioned in such agreement, in this, that they had only paid him the one-half part of each and all of the estimates of the amount due him for work done and materials furnished by him, under such agreement, made from time to time as the work progressed, and of the final estimate at the completion of such school-house, and had wholly failed to pay him the balance of the money due him on all such estimates, under such agreement. Fatout further alleged that, on the 5th day of November, 1884, and within sixty days after his completion of such school-house, he filed a mechanic's lien, in the recorder's office of Marion county, against the lots in the city of Indianapolis upon which such school-house was so erected by him, and against the school-house itself; which mechanic's lien was, on the same day, duly recorded in the proper record-book of such recorder's office. Fatout further alleged that the city of Indianapolis claimed to have some interest in the lots, upon which such school-house was so erected by him, but that if the city had any interest in such lots, it was junior to his mechanic's lien thereon. Wherefore he demanded judgment for $12,000, for the enforcement of his mechanic's lien, and for all proper relief.

The second paragraph of Fatout's complaint was a common count, wherein he sought to recover, *quantum meruit*, for the work and labor done and the materials furnished by him, at the request of such board of school commissioners, in the erection and completion of the same school-house mentioned in the first paragraph of his complaint. In such second paragraph of complaint, Fatout alleged that the board of school commissioners undertook and promised to pay him for such work and materials what the same were reasonably worth; that such work and materials were reasonably worth

the sum of $19,000, whereof such board had only paid him the sum of $8,491.50; and that the balance of the first-mentioned sum was then due and wholly unpaid. The second paragraph of complaint also contains substantially the same averments as the first paragraph, in regard to Fatout's mechanic's lien on the lots and school-house, and the interest, if any, claimed by the city of Indianapolis in such lots; and judgment was demanded for $15,000, for the enforcement of the mechanic's lien, and for all proper relief.

The demurrers of the city of Indianapolis, for the want of sufficient facts, were sustained by the court at special term to each paragraph of complaint.

The board of school commissioners separately answered the first paragraph of the complaint, in four paragraphs, of which the first, a general denial, was subsequently withdrawn. Fatout replied to the second paragraph of such answer, in two special or affirmative paragraphs; to each of which the demurrers of the board of school commissioners, for the alleged insufficiency of the facts therein, were sustained by the court at special term, and to these rulings Fatout excepted. His demurrers to the third and fourth paragraphs of such answer were overruled by the court, and he excepted and refused to reply thereto.

To the second paragraph of complaint, the board of school commissioners separately answered in a single special paragraph; to which answer Fatout replied specially, in a single paragraph. The demurrer of the board of school commissioners to this reply, for the alleged insufficiency of the facts therein, was sustained by the court. Fatout excepted, and, refusing to amend or plead further, judgment was rendered against him for appellees' costs by the court at special term. From this judgment he appealed to the general term, and there assigned as errors each and all of the rulings of the court, at special term, adverse to him. The judgment at special term was affirmed by the general term. From the judgment of the general term, Fatout prosecutes this appeal,.

and, by a proper assignment of error, has brought before this court all the errors assigned by him in general term.

Appellant's counsel say, in their brief: " The record presents but two questions, and each of these questions is presented by several rulings in special term." The first question discussed by counsel is fairly presented, we think, by the alleged error of the court in sustaining the demurrer to appellant's reply to the second paragraph of the separate answer of the board of school commissioners to the first paragraph of complaint; and we will consider and decide this question, as thus presented.

In the second paragraph of its answer to the first paragraph of complaint, the board of school commissioners admitted the execution of the agreement, set out in the first paragraph of complaint, as therein alleged, and that Fatout had built the school-house under and in accordance with the stipulations of such agreement; and the board averred that, at and before the time the first estimate was made and payment thereon became due to Fatout, such board not having the cash necessary to pay the contract price, and not having the prospect of such cash nor the ability to raise the same before July 1st, 1886, elected and determined to pay for such work at the price stipulated therefor, upon the plan of half cash and half in notes, namely, the sum of $16,983; that, in pursuance of such plan, such board did, from time to time, as such estimates were made, pay to Fatout who, from time to time, received the same, one-half in cash of each of such estimates, all of which payments were made before the commencement of this suit, except the final estimate, for which the board was always ready and willing to pay, in like manner, after it became due, and did pay one-half cash when Fatout called for it, three days after he commenced this suit; that, in further compliance with the terms of such agreement, on its part to be kept and performed, the board of school commissioners had been and was, at all times, ready, willing and offering to give Fatout its notes for the residue

of the contract price for such school-house, payable with five per cent. interest on July 1st, 1886; and that such board had in fact made, signed and tendered its notes to Fatout, in compliance with its part of such agreement, but he had refused to accept such notes.

Fatout's reply to this answer was in two paragraphs, but in neither of them did he controvert any of the facts upon which the board of school commissioners rests its defence to his action, namely, that the board had fully paid Fatout in cash the one-half of the contract price for the completion and erection of the school-house, and that, for the residue of such price, it had made, signed and tendered its notes to him in substantial compliance with its part of the agreement sued upon. In his reply, Fatout claims that he is not bound to accept the notes of the board of school commissioners, because such notes were at all times null and void, and were made and tendered by the board without any authority whatever of law therefor. The board's notes are claimed by Fatout to be invalid, null and void, for two reasons, each of which is stated in a separate paragraph of reply; and we will separately consider and pass upon the sufficiency of these two replies.

In his first special reply, Fatout alleged that the notes of the board of school commissioners, made and tendered to him, were invalid and void, because, he said, such board was created, organized and existed solely under the provisions of an act of the General Assembly of this State, entitled, "An act providing for a general system of common schools in all cities of thirty thousand or more inhabitants, and for the election of a board of school commissioners for such cities, and defining their duties and prescribing their powers, and providing for common school libraries within such cities," approved March 3d, 1871 (sections 4457 to 4463, R. S. 1881); that, by the *eighth* clause of section 4460, R. S. 1881, in the above entitled act, such board was authorized "To prepare, issue, and sell bonds to secure loans, not exceed-

ing in the aggregate the sum of one hundred thousand dollars, in anticipation of the revenue, for building school-houses, to bear such rate of interest, not exceeding ten per cent. per annum, and payable at such time, within five years from date, as the board may determine; and the money obtained as a loan on any such bonds shall be disbursed by order of such board, in payment of expenses incurred in building school-houses: *Provided,* That until all the bonds of any one issue shall have been redeemed, such board shall not be authorized to make another issue; nor shall any such bonds be sold at a less rate than ninety-five cents on the dollar."

And the appellant averred that, long before the execution of the agreement sued upon, the board of school commissioners, in execution of the authority so conferred upon it by the statute, prepared, issued and sold its bonds to secure loans aggregating the full sum of $100,000, in anticipation of its revenue, for building school-houses, payable five years after date and bearing six per cent. interest; that the money so obtained was, before the making of the agreement now in suit, disbursed upon the order of such board in payment of expenses incurred in building school-houses within the limits of the city of Indianapolis; that all such bonds were and had been at all times since the issue and sale thereof, and still were, outstanding and wholly unpaid; and so the appellant said that, at the time of the making of the agreement described in his complaint, and at all times since, such board of school commissioners had been and was prohibited by law from issuing any further note or bond to pay for the building of school-houses within the limits of such city, and that the notes and obligations of such board, provided for in such agreement and mentioned in its second paragraph of answer, were therefore null and void, and the appellant was not required to accept the same in payment and satisfaction of his debt.    Wherefore, etc.

This paragraph of Fatout's reply proceeds upon the theory that the *eighth* clause above quoted of section 4460, R. S.

1881, is a limitation upon the power or authority of the board of school commissioners to build school-houses within its territorial jurisdiction, wholly or partially upon credit. This view of the statutory power or authority of such board, in the erection of school-houses, it seems to us, is not warranted by the provisions of the statute. By the *fifth* clause of section 4460, such board of school commissioners is expressly authorized " To purchase grounds, construct school buildings, purchase supplies, employ and pay teachers, appoint superintendents, and disburse, through the treasurer of the board of school commissioners, moneys for all school and library expenses." The powers conferred upon such board, by this clause of the statute, are limited only by the educational wants of the school corporation, under the board's control, in the exercise of a sound and reasonable discretion. In section 8 of the above entitled act of March 3d, 1871, section 4463, R. S. 1881, it is provided that "All parts of the general school laws of this State, not inconsistent herewith, and which may be applicable to the general system of common schools in such city, herein provided for, shall be in full force and effect in such city." Construing the provisions of the above entitled act of March 3d, 1871, in connection with section 4438, R. S. 1881, in force since March 6th, 1865, the city of Indianapolis is " a distinct municipal corporation for school purposes, by the name and style " of the Board of School Commissioners of the City of Indianapolis, " and by such name may contract and be contracted with, sue and be sued, in any court having competent jurisdiction."

The board of school commissioners had the power, therefore, under the *fifth* clause of section 4460, to contract with Fatout for the erection and completion of the school-house, mentioned in the agreement sued upon; and it might agree to pay him therefor, partly in cash and partly on time. For the deferred payments, the board might lawfully make and deliver its promissory notes; and such notes executed to Fatout, upon such consideration, would be valid obligations

and binding upon the school corporation. *Sheffield School Tp.* v. *Andress,* 56 Ind. 157; *School Town of Monticello* v. *Kendall,* 72 Ind. 91 (37 Am. R. 139); *Wallis* v. *Johnson School Tp.,* 75 Ind. 368; *Johnson School Tp.* v. *Citizens Bank, etc.,* 81 Ind. 515.

The *eighth* clause of section 4460, as we construe its provisions, was not intended by the General Assembly as a limitation upon the general powers conferred upon the board of school commissioners by the *fifth* clause of such section. *Miller* v. *White River School Tp.,* 101 Ind. 503. On the contrary, we think it was the manifest intention of the Legislature, in and by the *eighth* clause of such section, to give such board of school commissioners an additional and extraordinary power, not conferred upon school corporations generally; and that the *proviso* in such *eighth* clause is, and was intended to be, a limitation only upon the board's exercise of such additional and extraordinary power. We are of opinion that promissory notes, executed by the board of school commissioners in settlement of its just debts, fairly contracted for the legitimate purposes of the school corporation, do not come within the purview of the *eighth* clause of section 4460, R. S. 1881, or of the *proviso* therein. We conclude, therefore, that the court did not err in sustaining the demurrer to the first special reply of Fatout to the second paragraph of the board's separate answer.

The error assigned by Fatout to the sustaining of a demurrer to his second special reply to the second paragraph of the board's answer to the first paragraph of his complaint is not discussed here by his counsel, and is, therefore, regarded as waived.

One other question, presented by the record and discussed by the counsel of the appellees as well as of the appellant, may be thus stated: Can a mechanic's lien be acquired or enforced, either for work done or for materials furnished in the erection of a public school-house? We are of opinion that this question must be answered in the negative. It is true

that the mechanic's lien law of this State contains no exceptions, and is broad enough in its provisions to admit of the acquisition and enforcement of such a lien against a public school-house. It is true, also, that in *Shattell* v. *Woodward*, 17 Ind. 225, it was held by this court that a mechanic's lien could be enforced, under our statute, for work done and materials furnished in the erection of a school-house built by order and contract of a township trustee. It is manifest from the opinion in the case cited, that the question was not carefully considered; for the decision is rested wholly upon the general language of the statute, without the citation of a single authority. Notwithstanding the broad and comprehensive provisions of the mechanic's lien law, it was held by this court, in the recent case of *Board, etc.*, v. *O'Conner*, 86 Ind. 531 (44 Am. R. 338), that a mechanic's lien could neither be acquired nor enforced against the court-house and public offices of a county, in this State. The court there said : " In the mechanics' lien law of this State there is no provision to the effect that such a lien may be acquired or enforced upon or against public property held for public use; and, in the absence of such a provision, we must hold, in conformity with the weight of authority elsewhere, that such a lien can neither be acquired nor enforced upon or against such property held for such use."

The doctrine of the case last cited is decisive, as it seems to us, of the question we are now considering, adversely to the validity of the mechanic's lien which Fatout claims to have acquired, and is seeking to enforce upon and against the public school-house erected by him, in the case in hand. For there is no public property held for a more sacred public use than a public school-house of a public school corporation, under the Constitution and laws of this State. See, also, the cases of *Board, etc.*, v. *Norrington*, 82 Ind. 190, and *Lowe* v. *Board, etc.*, 94 Ind. 553.

The case of *Shattell* v. *Woodward*, *supra*, is overruled.

We have found no error, in the record of this cause, which authorizes or requires the reversal of the judgment below.

The judgment is affirmed, with costs.

