Campbell *v.* City of Indianapolis.

CAMPBELL ET AL. *v.* CITY OF INDIANAPOLIS ET AL.

[No. 19,258. Filed June 29, 1900.]

CONSTITUTIONAL LAW.—*Act Authorizing Organization of Board of School Commissioners for City of Indianapolis.—Special Legislation.*—The act of March 3, 1871, authorizing the organization of a board of school commissioners in all cities of 30,000 or more inhabitants, "according to the United States census for the year 1870," there being only one city in the State at the time of the enactment of the statute containing such a population, is unconstitutional, being special legislation. *pp. 190-200.*

Campbell *v.* City of Indianapolis.

CONSTITUTIONAL LAW.—*Act Concerning Schools in Cities of 100,000 Inhabitants.*—The act of March 4, 1899 (Acts 1899 p. 434), concerning common schools in cities having a population of 100,000 "according to the last United States census " is an act of general application, and is constitutional, though at the time it was enacted there was but one city in the State containing such population. *p. 203.*

SAME.—*Act Concerning Schools in Cities of 100,000 Inhabitants.*—The act of March 4, 1899 (Acts 1899 p. 434), "concerning common schools in cities having a population of 100,000," etc., is not rendered special legislation and, therefore, unconstitutional by the provision of section 4 thereof, to the effect that, "At the city election occurring on the second Tuesday of October, 1899, five members of the board of school commissioners shall be elected to serve as herein provided," although there was at the time of the enactment no city in the State other than Indianapolis which held an election on the second Tuesday of October, 1899. *p. 204.*

SAME.—*Remedial Legislation.*—Although the act of March 3, 1871, authorizing the election and defining the duties of a board of school commissioners for cities of 30,000 population is unconstitutional, the acts of such board in issuing and negotiating school bonds are cured by the act of March 4, 1899 (Acts 1899 p. 434). *pp. 205, 206.*

MUNICIPAL CORPORATIONS. — *School City of Indianapolis. — Debt Limit.*—The debts of the school city of Indianapolis and those of the civil corporation are not to be aggregated to determine the debt limit to which either is entitled under the Constitution, and the right or power of either of these corporations to contract an indebtedness not in excess of the limit fixed by the Constitution is affected only by its own existing debts. *p. 213.*

From the Marion Superior Court.   *Affirmed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler, S. D. Miller,* and *F. Winter,* for appellants.

*J. W. Kern, J. E. Bell, Benj. Harrison* and *Baker & Daniels,* for appellees.

JORDAN, J.—Appellants Campbell and Wild, as citizens and taxpayers of the city of Indianapolis, Indiana, on January 30, 1900, instituted this action to enjoin the defendants below, the board of school commissioners of the school city of Indianapolis and the civil city of Indianapolis, from issuing certain school bonds to the amount of $100,000 as the obligations of the said school corporation, and from

paying either the interest or principal upon outstanding school bonds issued by the board of school commissioners of said city in 1890.

The city of Indianapolis and the board of school commissioners, the latter representing the school corporation thereof, each separately demurred to the complaint for insufficiency of facts. These demurrers were each sustained, and final judgment was rendered in favor of the defendants; and this appeal is prosecuted by appellants from that judgment upon the exceptions reserved by them to the ruling of the court in sustaining the demurrer to their complaint.

It is virtually conceded, and properly so we think, that the civil city of Indianapolis is not a necessary party to this action. It may be further asserted that it is not even a proper party thereto, and, so far as the questions here involved are concerned, the civil city of Indianapolis may be considered as eliminated from the case.

The material facts disclosed under the averments of the complaint are as follows: Appellee, the board of school commissioners, has the charge and control of the affiairs and business of the school city or school corporation of Indianapolis and of all matters relating to the common schools of such city. This board was created and organized, as alleged, under an act of the General Assembly of this State in force March 3, 1871 "with the amendments thereto and supplementary acts of the legislature subsequently enacted and the act of March 4, 1899". Such board has had the charge and control of the public schools and school affairs of the school corporation of the city of Indianapolis since its organization under the act of March 3, 1871. On March 1, 1890, the aggregate indebtedness of the civil city of Indianapolis and of its school corporation was $2,145,500, which amount at that time exceeded two per cent. of the taxable property of the city of Indianapolis. It is further averred that at no time since March 1, 1890,

Campbell *v.* City of Indianapolis.

and the time of filing the complaint in this action has the aggregate indebtedness of the civil city and the school city combined been under two per cent. of the assessed taxables of the current year, as shown by the city's tax duplicate.

By reason of the increased value of the taxable property of the city and by payment of a portion of the public debt incurred by the civil city, the latter's indebtedness has been reduced within the two per cent. limit. On March 1, 1890, the board of school commissioners, acting in behalf of and representing the school corporation of that city, issued bonds to the amount of $80,000, payable ten years after date with interest at four per cent. per annum. These bonds were sold and negotiated by said board of school commissioners and the proceeds arising from the sale thereof were applied to and used for legitimate school purposes. On July 1, 1890, said board issued and sold $20,000 additional school bonds, which, including those issued on the 1st day of March of that year, made in the aggregate $100,000; all of which bonds were issued and negotiated by the said board upon the assumption and under the claim that it was a corporation entirely independent of the civil city and that as such school corporation it had the power to contract an indebtedness of its own for school purposes to an amount not exceeding two per cent. of the taxable property of the city of Indianapolis, notwithstanding the fact that at the time of the issue of said bonds the indebtedness of said civil city and the indebtedness of the school corporation combined exceeded two per cent. of the taxable property for the year 1890 and for each following year thereafter.

It is further averred that this board of school commissioners claim and assert on behalf of its school corporation that the indebtedness thereof is not to be counted or considered as a part of the indebtedness of the civil city of Indianapolis in order to determine whether the latter has exceeded the two per cent. limit prohibited by the Consti-

tution of this State. The board of school commissioners in 1890, in contracting the indebtedness by the issue and sale of the bonds heretofore mentioned, acted under the claim and assumption, and so continues to act, that each of the said corporations, civil and school, might contract debts independently of each other, and that the indebtedness of each, under the provisions of article thirteen of the State Constitution must be admeasured and considered independently of each other. The bonds issued on March 1, 1890, will mature the 1st day of March, 1900, and the series issued on July 1st of that year will mature on July 1, 1900; and it is alleged in the complaint that the holder of these latter bonds has agreed with said board of school commissioners to accept the payment thereof on March 1, 1900, in consideration of the fact that the board has agreed to pay him interest on such bonds to April 1, 1900.

In order to take up and fund these two series of bonds issued in 1900, it is averred that the board has ordered by resolution that other bonds be issued and sold for that purpose, the same to draw interest at three and one-half per cent. and to bear date of March 1, 1900, etc. It is further alleged that said board, unless enjoined, will, on March 1, 1900, pay out of the money in its treasury the interest due on the bonds of 1890, which will amount to over $1,800.

There is no averment in the complaint that the bonds issued in 1890 increased the indebtedness of the school city of Indianapolis to an amount in excess of the two per cent. of its taxable property or that its present indebtedness is in excess of that amount.

The complaint closes with the prayer that the court enjoin the board of school commissioners from issuing the proposed new bonds and from paying any part of the school bonds issued in 1890, principal or interest.

The cardinal question involved in this appeal, under the facts, is in respect to the validity of the $100,000 of school bonds, issued by the board in 1890 as stated, which the pres-

Campbell *v.* City of Indianapolis.

ent board is now proposing to refund by the issue and sale of new bonds. It is insisted by counsel for appellants that the decision of this principal question involves three other subordinate propositions, namely: (1) Was the statute of March 3, 1871, which authorized the organization of a board of school commissioners of the school corporation of the city of Indianapolis a valid act of the legislature? (2) If invalid, have the acts of said board in issuing and negotiating the school bonds, and contracting thereby the indebtedness in issue in this action, been remedied or cured by the provisions of the statute in force March 4, 1899? (3) Are the debts of the civil city of Indianapolis and those of the school city or school corporation, incurred under the control and government of its board of school commissioners, to be treated and considered under the law as the obligations of distinct and separate municipal corporations, or must the indebtedness of each be combined and limited alone to the civil city, to determine if the latter has exceeded the two per cent. limit of indebtedness prohibited by article thirteen of the State Constitution.

We address ourselves to a consideration of these questions fully impressed with their great public importance, as it is evident, as insisted by counsel for appellee, that a decision adverse to it would in the main be disastrous to the public schools of Indianapolis, and in its effect would result in coercing appellee to repudiate an indebtedness incurred in building up and promoting the public school system of that city, and, as contended, would render worthless over $700,000 of bonds issued by the school board and the civil city. At the very threshold we are confronted with the contention of counsel for appellee that appellants are not in a position in this action to question the validity of the organization of the board of school commissioners. It is urged that this body, as created or provided for by the statute of March 3, 1871, has been in existence and recognized as a legitimate organization by both the people of

that city and its public authorities for a period of twenty-nine years, and not until the institution of this action has the validity of that board or its authority to act in the management and control of the school affairs of the city of Indianapolis in any manner been denied. Therefore, it is contended that, by this long acquiescence in the existence of this board upon the part of the people and public officials of that municipality, appellants are precluded from attacking its validity in this collateral proceeding. Numerous authorities are cited to sustain this contention. It is also further urged that appellants' petition to secure an injunction against the payment of the school bonds issued by the board in 1890 is devoid of equity for the reason that it appears that they have been guilty of gross laches in delaying for almost ten years in making their attack upon the bonds in controversy.

In consideration of the view which we entertain in respect to the principal questions which appellants urge upon us for our determination, we pass the decision of those presented by appellee in relation to the rights of appellants to maintain this action, as we recognize that the public importance of the principal questions involved herein requires that they be settled, and not left undetermined to be agitated again in the future.

By section 4 of an act of our legislature in force since March 6, 1865 (Acts 1865, p. 3), entitled "An act to provide for a general system of common schools, etc", it is declared that, "Each civil township and each incorporated town or city in the several counties of the State is hereby declared a distinct municipal corporation for school purposes, by the name and style of the civil township, town or city corporation respectively, and by such name may contract and be contracted with, sue and be sued, in any court having competent jurisdiction; and the trustee of such township, and the trustees provided for in the next section of this act, shall, for their township, town, or city, be

school trustees and perform the duties of clerk and treasurer for school purposes." §4438 R. S. 1881, §5914 Burns 1894.

The government of the affairs of this distinct school corporation for school purposes in each incorporated town and city in the State was, under the provisions of section five of the school law of 1865, lodged in a board of school trustees to be elected in each city by its common council. This general school law of 1865 provided a uniform system of common schools throughout the State, which applied to the city of Indianapolis in like manner as it did to any other incorporated city, and, under the provisions of section four, "a distinct municipal corporation for school purposes" was created within said city, and by that act placed under the government or control of a board composed of three school trustees to be elected by the common council. And so the law pertaining to the school affairs of that city seems to have remained until March 3, 1871, when the legislature passed a statute entitled "An act providing for a general system of common schools in all cities of 30,000 and more inhabitants, and for the election of a board of school commissioners for such cities, defining their duties and prescribing their powers, etc." Acts 1871, p. 20. The provisions of this statute and of those amendatory or supplemental thereto, with the exceptions of section seven, will be found included in §§5936 to 5948 Burns 1894.

The first section of this statute of 1871 provides that "In all cities of this State of 30,000 or more inhabitants, according to the United States census for the year 1870, there shall be elected, by the qualified electors of each school district of such city, one school commissioner, to serve as a member of the board of school commissioners of such city, etc." Section two provides for dividing any such city into school districts, section three for the organization of such board of school commissioners and for filling any vacancy

that may occur; and further provides that: "It is hereby made the duty of the board of school trustees in office, at the time of the organization of the board of school commissioners, to at once turn over to the board of school commissioners all books and papers pertaining to their trust, and to place in possession of the board of school commissioners all moneys, title papers, and property belonging to the school trustees or common schools of such city, and such board of school trustees shall thereafter cease to perform any and all duties whatever connected with the schools of such city."

Section four of the act defines the duties and powers of the board, among which are the following:

"(2)   To levy all taxes for the support of the schools within such city including such taxes as may be required for paying teachers in addition to the taxes now authorized to be levied by the General Assembly of this State by the general laws thereof."

"(5)   To purchase grounds, construct school buildings, purchase supplies, employ and pay teachers, appoint superintendents, and disburse through the treasurer of the board of school commissioners moneys for all school and library expenses."

"(8)   To prepare, issue and sell bonds to secure loans not exceeding in the aggregate the sum of $100,000 in anticipation of the revenue for building schoolhouses, to bear such rate of interest, not exceeding ten per cent. per annum, and payable at such time within five years from date as the board may determine, and the money obtained as a loan on any such bonds shall be disbursed by order of such board, in payment of expenses incurred in building schoolhouses; Provided, That until all the bonds of any one issue shall have been redeemed, such board shall not be authorized to make another issue, nor shall any such bonds be sold at a less rate than ninety-five cents on the dollar."

By a supplemental act passed in 1889 (§5940 Burns 1894), such boards were authorized to issue and negotiate

Campbell v. City of Indianapolis.

bonds to secure loans at any one time not exceeding $250,-000, in anticipation of the revenue, for purchasing grounds and building schoolhouses, such bonds to bear interest not exceeding six per cent., and to be payable within ten years at such time as the board of school commissioners may determine. The money obtained as a loan on any of such bonds is required by this supplemental act to be disbursed by the board in payment of indebtedness incurred in the purchase of grounds or in the building of schoolhouses or in refunding any bonds or other indebtedness issued for such purposes.

Section seven of the act of 1871 extends the benefits of the entire statute to any city having a population of less than 30,000; and further provides that when a board of school commissioners is elected and organized in such city it "shall supersede the board of school trustees then in office". By section eight of the act in question it was declared that, "All parts of the general school laws of this State, not inconsistent herewith, and which may be applicable to the general system of common schools in such city herein provided for, shall be in full force and effect in such city."

It is evident, in our opinion, from an inspection of the provisions of this statute, that it was not the purpose of the legislature thereby to create a school corporation for the city of Indianapolis, which was the only city, it seems, under the federal census of 1870, to which the law at the time of its enactment could apply, for "such a distinct municipal corporation for school purposes" had already, as we have shown, been created for that city under section four of the general school law of 1865. (§4438 R. S. 1881, §5914 Burns 1894).

It may be assumed that the legislature was led to enact the statute of 1871 by reason of the fact that the larger cities of this State, in the very nature of their surroundings and character, required, in the maintenance and fur-

therance of the common school system established therein, that a change ought to be made in the governing body of the school corporations of such cities, and that additional and extraordinary powers should be conferred upon such school corporations. Therefore, when the provisions of this statute are considered, it is manifest, we think, that the principal purpose or purposes of the legislature, by the enactment thereof, was to change the governing board of the school corporations in any city to which the law might become applicable, by superseding the then existing board of trustees by a board of school commissioners to be elected by the electors of the city as therein provided, and thereby place the educational affairs pertaining to such school corporations under the control and government of said boards, and to invest the latter, in regard to the respective school corporations under their control, with additional and extraordinary powers, especially in regard to the issuing and sale of bonds in order to secure loans of money in favor of such school corporations, to be used and expended by such boards in the payment of expenses incurred by the purchase of school grounds and construction of school buildings. There certainly can be no claim or pretension that previous to this legislation of 1871 there was any law in this State under which the school corporation of the city of Indianapolis could claim the right or power, through its board of school trustees, to contract an indebtedness by the issue and sale of bonds for the purposes provided by that statute. *Fatout* v. *Board, etc.,* 102 Ind. 223; *Wilcoxon* v. *City of Bluffton,* 153 Ind. 267.

In *Fatout* v. *Board, etc., supra,* the force and effect of the act in controversy, to an extent, was considered by this court, and in the course of the opinion it is said: "The powers conferred upon such board, by this clause of the statute, are limited only by the educational wants of the school corporation, under the board's control, in the exercise of a sound and reasonable discretion.   *   *   *   Con-

struing the provisions of the above entitled act of March 3, 1871, in connection with §4438 R. S. 1881, in force since March 6, 1865, the city of Indianapolis is a 'distinct municipal corporation for school purposes, by the name and style' of the board of school commissioners of the city of Indianapolis 'and by such name may contract and be contracted with, sue and be sued, in any court having competent jurisdiction.' "

The school corporations of this State, as we have seen, are the creatures of the legislature. They are involuntary corporations created as instrumentalities or agencies in the hands of the State to carry out its will in respect to its great common school system, and at all times are subject to the legislative will; provided, of course, that such power must be exercised by the legislature so as not to disturb or impair existing contract rights. Certainly, then, the State, through its legislature, may at its pleasure at any time change the trustees of such corporations, and confer upon them and authorize them to exercise any and all powers that may be necessary to carry out the object or purpose of their creation. *Board* v. *Center Township,* 143 Ind. 391; *Center School Township* v. *State,* 150 Ind. 168; *Root* v. *Erdelmeyer,* 37 Ind. 225.

In the case of *Schneck* v. *City of Jeffersonville,* 152 Ind. 204, in considering the power of the legislature over municipal corporations, this court on page 212 of its opinion said: "Subject to the restrictions of the State and federal Constitutions, the legislature would seem to have complete power and control over municipal corporations. Especially is this true in reference to authorizing them to contract debts, and to issue and sell negotiable bonds, and other evidences of such indebtedness."

Assuming for the present that the legislature, in the enactment of the statute of 1871 and the acts supplemental thereto, exercised its power in a valid manner, we are of the opinion that when the plain provisions of clauses five

and eight of section four of that act are considered along with those of the supplemental act in force March 5, 1889 (§5940 Burns 1894), the fact is clearly demonstrated that the legislature thereby conferred upon the school corporation of any city of this State which had the designated population of 30,000, or over, under the federal census of 1870, the power, to be exercised through its board of school commissioners, to borrow any sum of money not in excess of the limit fixed by §5940, *supra,* by the means of issuing and negotiating bonds, the money so obtained by such loan to be expended, under the order of the board of school commissioners, for the purpose of paying the indebtedness of such school corporation incurred in the purchase of grounds or in building schoolhouses, or to be used for the purpose of taking up or refunding bonds or other evidence of indebtedness issued by such school corporation for such purposes. It is also made evident by these provisions of the statute that the legislature intended that the authority to borrow money so conferred upon such corporation should be exercised by this board of school commissioners independently of the civil city, without obtaining the consent or sanction of the latter. It would certainly follow, under such circumstances, in the absence of any provision or declaration of the legislature to the contrary, that such indebtedness and liability created by the issue and sale of such bonds would be that alone of the school corporation, and that no indebtedness or liability would be incurred thereby upon the part of the civil city. *Fatout* v. *Board, etc.,* 102 Ind. 223; *Wilcoxon* v. *City of Bluffton,* 153 Ind. 267.

In this latter case, on page 270 of the opinion, it is said: "It can not be successfully controverted but what the legislature of this State, if it deems proper, may empower school corporations of cities and towns to issue and sell their bonds in order to raise money to construct schoolhouses, etc., and in this manner create an indebtedness upon the part of such school corporations, for which they alone would be liable."

Campbell v. City of Indianapolis.

We are confronted, however, as previously stated, by appellants with the contention that this statute of March 3, 1871, together with the amendatory and supplemental acts enacted in respect thereto, under which the board of school commissioners of the school city of Indianapolis, as alleged, was organized, and under which it assumed to act in issuing and negotiating the school bonds of 1890, must be regarded as special legislation providing for supporting common schools and for the preservation of school funds, and is therefore rendered invalid for the reason that it is violative of specification thirteen, section twenty-two, article four of the State's Constitution. This section and specification, so far as pertinent to the question here involved, read as follows: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say, * * * providing for supporting common schools and for the preservation of school funds."

Counsel for appellants argue with much earnestness that the act in question must be regarded as special legislation, for the reason that, by the express provisions of its first section, it is limited in its application to cities only of 30,000 or more inhabitants, according to the United States census for the year 1870. Therefore, they insist that the city of Indianapolis is the only one in this State which, at the time of the passage of the act, had attained to the standard of population fixed by its provisions.

Of this fact we take judicial notice, as all courts are required to take judicial knowledge of the census of the United States. It is contended that no matter how many cities of the State might, under the federal census of 1880 or 1890, or any other future census, have 30,000 or more inhabitants, the act in controversy would not be applicable to any of them, because they did not and could not in reason have such population according to the census of 1870. It is true that this statute does not in the main profess to be a

special law. Its title would seem to disclose that it was the intention of the legislature to enact a law "for a general system of common schools in all cities of 30,000 or more inhabitants and for the election of a board of school commissioners for such cities, etc."

The seventh section thereof, as previously said, extends its provisions to any city having less than 30,000 inhabitants. This latter section, however, as insisted by appellants, is possibly invalid for the reason, as claimed, that it is not properly embraced in the title. Without deciding in regard to the constitutional infirmity alleged to exist in respect to this section, it may, nevertheless, be considered, in order to cast light upon the question as to whether the act was intended to be general or special legislation.

Were it not for the express declaration in section one, which absolutely fixes the census of 1870, and confines it to that alone, as the one by which the population is to be determined, it might be viewed as one general in its operation, applying alike to all cities within the classification of 30,000 or more inhabitants. But this express declaration upon the part of the legislature would seem to countervail or destroy whatever general features the act possesses by restricting its operation to such cities as had the required population according to the census of 1870. Any and all other cities, which might by a future census be shown to be within the classification of 30,000 inhabitants or more, by this express provision of the statute would necessarily be excluded from its operation. That, under such circumstances, a law of this character must be regarded as special, and not general, legislation, seems to be, according to the authorities, a well settled proposition.

As to whether the statute can be said to be one providing for the support of common schools and for the preservation of school funds, within the meaning of specification thirteen of section twenty-two of article four of the Constitution, which prohibits the passage of a special law by the

legislature for such purpose, we do not deem it necessary to decide, in view of the opinion which we entertain relative to the second question propounded by appellants.

There is virtually no contention that there was any absence of power, upon the part of the legislature, to authorize school corporations to perform, through boards of school commissioners, the acts or functions mentioned and provided for by the act of 1871 and other acts supplemental thereto. The defect or infirmity of which appellants complain consists in the method employed by the legislature in providing for the creation of boards of school commissioners to act for such corporation and by which they were empowered to perform the duties and functions mentioned and provided for under said act. The defect or invalidity with which, as appellants claim, the act of 1871 is impressed, does not extend to the absence of legislative authority to confer the power or powers therein provided by reason of any restriction of fundamental law, but it applies only to the particular special method by which the legislature undertook to exercise the power with which it was invested. In such cases counsel for appellee contend that the State, as the sovereign power, through its legislature, may subsequently remedy or cure acts previously performed under color of an invalid law enacted under such circumstances. It is therefore argued by counsel that, under the provisions of an act of the legislature in force March 4, 1899 (Acts 1899, p. 434), the indebtedness of the school corporation of the city of Indianapolis, incurred by the issue and sale of the bonds of 1890 by the predecessor of the present board of school commissioners, has been validated and the payment thereof by appellee legalized.

Appellants, however, seek to parry the force of appellees' argument upon this feature by contending that the act of 1899 is also special legislation, for the reason that under its provisions the city of Indianapolis is the only one in the State to which it can apply; and as it attempted in a

special manner to legislate in respect to the support of common schools, it must, under the provisions of the Constitution heretofore referred to, be condemned as invalid. Consequently it is insisted that by no means can the act of 1899 operate to remedy or legalize the invalidity or defects urged against the bonds in issue in this action.

This position or claim of counsel in respect to the act in question being a special law is, in our judgment, not tenable, and can not be sustained.

The act of 1899, by its title, professes to be a general law concerning common schools in cities containing a population of more than 100,000. The first section of this act is as follows: "Be it enacted * * * That the government of common schools in cities of 100,000 or more inhabitants, according to the last United States census, shall be vested in a board of school commissioners, which shall consist of five school commissioners. The said board of school commissioners shall have and exercise all the powers now conferred by an act of the General Assembly of this State, approved March 3, 1871, entitled 'an act providing for a general system of common schools in all cities of 30,000 or more inhabitants, and for the election of a board of school commissioners for such cities, and defining their duties and prescribing their powers, and providing for common school libraries within such cities', and all acts amendatory thereof and supplemental thereto; and also all powers now conferred by law on boards of school commissioners in cities of 30,000 or more inhabitants, according to the United States census of 1870, as well as the powers now conferred by law on boards of school commissioners in cities of 100,000 or more inhabitants, except as otherwise herein provided. *And said board of school commissioners provided for by this act shall assume, pay and be liable for all the indebtedness and liabilities of boards of school commissioners heretofore elected under the above described acts.*" (Our italics.)

In this latter section, it is declared that the government of common schools in cities of 100,000 or more inhabit-ants, *"according to the last United States census"* (our italics), shall be vested in boards of school commissioners. The same section declares that such board shall have and exercise all the powers conferred by the act of March 3, 1871, being the statute previously considered, as well as those conferred by all acts amendatory of and supplemental to such act of 1871, "as well as the powers now conferred upon boards of school commissioners in all cities of 100,000 or more inhabitants."

By section twenty-six it is provided that the general school law of the State and all laws and parts of laws applicable to the general system of common schools in such school city and not inconsistent, etc., "shall be in full force and effect in such city."

It would seem that the legislature intended to substitute the act of 1899 for that of 1871 and for all acts amendatory and supplemental thereto, as mentioned in the first section of the former statute, and thereby to confer upon the school corporations of cities of 100,000 or more inhabitants the powers and functions as therein enumerated and pro-vided, in addition to those embraced in and provided for by said act of 1871. It is a settled proposition that a statute which classifies cities or other localities, to be governed by its provisions, by a given or fixed population "according to the last United States census", will be held to apply to all other cities or localities which under any federal census in the future may pass into such class. The expression "last United States census" employed by the legislature in such a statute will be considered to refer to the last census pre-ceding the enactment of the law, and to each succeeding census as it occurs, and, under such circumstances, the law will be held to be of a general character, and not of a special or local nature. *City of Indianapolis* v. *Navin,* 151 Ind. 139, 146, 41 L. R. A. 337; *Boyd* v. *City of Milwaukee,* 92

Wis. 456, 66 N. W. 603; *Johnson* v. *City of Milwaukee,* 88 Wis. 383, 60 N. W. 270; *Campbell's Appeal,* 132 Pa. St. 257, 19 Atl. 219, 7 L. R. A. 193; *Fellows* v. *Walker,* 39 Fed. 651.

That the law in question was intended by the legislature to be general is fully disclosed by section thirty-three, whereby it is declared in effect that the provisions of the act, shall apply to and govern any city which at the time of its passage had not attained to the population provided, when according to any federal census in the future such city may be shown to have reached the required population. The statute in question, under its provisions, is made applicable to to any and all cities which measure up to the standard of population therein fixed, as disclosed by the last federal census preceding its passage, and also to any city or cities as may be shown to have the necessary population according to any federal census in the future. The fact that the city of Indianapolis is the only one of the grade mentioned to which the law in dispute can have a present application will not alone be sufficient to condemn it as a special statute.

Counsel for appellants assert that under the provisions of section four in relation to the election of commissioners provided for by this act, it is made special legislation. This section begins as follows: "At the city election occurring on the second Tuesday of October, 1899, five members of the board of school commissioners shall be elected to serve as herein provided." It is said that there is no city in this State other than Indianapolis which held an election on the second Tuesday of October, 1899. The fact that the city of Indianapolis is the only one to which this provision was applicable certainly would not alone serve to render the entire act special when by its other terms and provisions it is disclosed that it was intended to be applicable generally to all cities subject to its operation or control. Without further comments we conclude that the act of 1899 is in its nature a general law, and is therefore not invalid by reason of the objections urged by appellants.

The question next presented for determination relates to the operation and effect of the provisions embraced in that part of section one indicated by our italics. As previously affirmed, there can be no question as to the jurisdiction of the legislature to legislate upon the subject of common schools and to confer the powers which, as claimed, were attempted to be conferred upon appellee's predecessor under the act of March 3, 1871, and acts connected with or supplemental thereto. The infirmity imputed to these acts is that of special legislation in violation of the constitutional provision to which we have previously referred. There was no want of power, as we have seen, upon the part of the State, by proper legislation, to confer the authority upon the school corporation of the city of Indianapolis to borrow money for school purposes and to issue its bonds to secure a loan so obtained. Appellants, under their complaint, may be said to admit that the board of school commissioners, which issued the bonds of 1890, was elected and organized under the law of 1871, and at least assumed to act, in the issue and sale of these obligations, under color of its authority. The board, elected and acting under the provisions of that statute, was, to say the least, a *de facto* board if not *de jure*, and its acts thereunder, if invalid, are, under the circumstances, subject to ratification or confirmation by the lawmaking power.

The rule in respect to the operation or effect of a curative or ratifying statute in such cases is stated by a leading authority as follows: "Such subsequent ratification may not only legalize the existence of a corporation formed without authority of law, and authorize the association to act in a corporate capacity thereafter, but it may also cure the illegality of corporate acts performed before the act of ratification was passed, and render such acts as valid and binding as if authority to perform them had been previously granted by the legislature." 1 Morawetz on Priv. Corp. §20.

That such ratifying acts are entitled to much favor and respect upon the part of the court, in the absence of any constitutional inhibition, is certainly true, especially if the effects thereof are in harmony with equity, justice, and public policy. Such remedial action upon the part of the State, through its legislature, is of the same and equal import in all respects as though authority had originally been granted by the State to perform the act sought to be legalized.

That the declaration embraced in section one of the act of 1899, to the effect that appellee, the present board of school commissioners of the school corporation of the city of Indianapolis, "shall assume, pay, and be liable for all the indebtedness and liabilities of boards of school commissioners under the above described acts" is applicable to the school bonds involved in this action can not, in our judgment, be successfully controverted. It may also be affirmed that this provision had the force and effect, under the circumstances, of curing all of the defects or infirmities claimed to exist in respect to the issue and sale of these bonds, by reason of the alleged invalidity of the statute of 1871. It is the command of the State, the principal, through its legislature, to appellee, as its agent, to assume and pay the indebtedness evidenced by these bonds issued under the circumstances heretofore stated. Under the authority of this remedial provision of the act in controversy, these bonds must be held to be the valid obligation of the school corporation of the city of Indianapolis, for the payment of which it is liable; and it is incumbent upon appellees to discharge the duty of paying them. See *Schneck* v. *City of Jeffersonville,* 152 Ind. 204, and authorities there cited. *Burget* v. *Merritt, ante,* 143, and cases there cited.

Appellants next insist that the bonds in controversy are invalid for the reason that at the time of their issue and sale the indebtedness owing by the school corporation and the civil corporation of the city of Indianapolis was in

Campbell *v.* City of Indianapolis.

excess of the limit prescribed by article thirteen of the State Constitution. This amendment to our Constitution was adopted on March 14, 1881, and, so far as it is material to the question as here presented, reads as follows: "No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate exceeding two *per centum* of the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void."

It is urged with much earnestness by appellants' learned counsel that the bonds in issue in this action must, in obedience to the above constitutional mandate, be held to be void because at the time of their issue the aggregate existing indebtedness of the school city and civil city of Indianapolis was, as shown by the facts alleged in the complaint, in excess of two per cent. of the taxable property within such civil city. The argument of counsel, as we view it, seems to be that the language "no political or municipal corporation * * * shall ever become indebted * * * to an amount in the aggregate exceeding two *per centum*" must be interpreted to refer to an aggregation of debts of any two or more political or municipal corporations having an existence within the same territorial limits. It is contended that the debts of each of such corporations must be aggregated in estimating the debt limit of any one of them under this provision of our Constitution. It is further contended that the board of school commissioners created by the act of 1871 was but an agency through which the civil city of Indianapolis was to exercise the power of managing its common school affairs.

Since 1852, school corporations, for conducting and managing the affairs of our free common schools, have been continuously in existence in this State. We have previously

seen that under section four of the school law of 1865, enacted at least sixteen years prior to the adoption of this amendment to the Constitution, "each incorporated town or city" was declared to be a distinct municipal corporation for school purposes. In *Root* v. *Erdelmeyer*, 37 Ind. 225, decided in 1871, nearly ten years before the adoption of the amendment in question, this court, by Worden, J., in construing this provision of the school law of 1865, said: "To be sure, 'each civil township and each incorporated town or city in the several counties of the State is hereby declared a distinct municipal corporation for school purposes.' 3 Ind. Stat. 441, §4. Thus each civil township in the State, as well as each incorporated city and town, is made an instrumentality by means of which the educational purposes of the State are carried out. But when taxes are assessed by means of these instrumentalities for building schoolhouses, they are assessed for school or educational purposes, and not for municipal purposes."

In fact it has been universally held by this court in a long line of cases, quite a number of which were decided prior to the adoption of the debt limit amendment to our Constitution, that a municipal school corporation created by the act of 1865, within the territorial limits of a township, incorporated town, or city, was by the provisions of that law made as distinct and separate a corporation or legal entity, in respect to the civil corporation, as though they each existed in entirely different territory. Each corporation was held to be possessed, according to law, of its own rights, and each was subject to the liabilities which it had legally incurred, and an action could not be maintained against one for the debts or liabilities of the other. *Utica Township* v. *Miller*, 62 Ind. 230, and cases cited; *Carmichael* v. *Lawrence*, 47 Ind. 554; *McLaughlin* v. *Shelby Tp.*, 52 Ind. 114; *Sims* v. *McClure*, 52 Ind. 267; *City of Huntington* v. *Day*, 55 Ind. 7; *Town of Noblesville* v. *McFarland*, 57 Ind. 335; *Greensboro Tp.* v. *Cook*,

Campbell *v.* City of Indianapolis.

58 Ind. 139; *Harrison Tp.* v. *McGregor*, 67 Ind. 380; *Hornby* v. *State*, 69 Ind. 102; *State* v. *City of Terre Haute*, 87 Ind. 212; *Fatout* v. *Board, etc.*, 102 Ind. 223, 230; *Middleton* v. *Greeson*, 106 Ind. 18; *Jarvis* v. *Robertson*, 126 Ind. 281; *Braden* v. *Leibenguth*, 126 Ind. 336; *Wilcoxon* v. *City of Bluffton*, 153 Ind. 267.

This was the exposition or construction of this provision of the school law of 1865 by the highest court of this State at and prior to the ratification of the constitutional amendment of 1881. It may at least be presumed that the people or electors of this State, at the time they ratified this amendment and thereby made it a part of our fundmental law, were familiar with the exposition or construction given by this court in respect to the nature or character of these distinct municipal school corporations, and, in the light afforded by this provision of the law of 1865 and the construction placed thereon, they ratified the amendment in question and intended that it should apply to such municipal school corporations in like manner as it was intended to apply to civil corporations.

It is a rule generally asserted that the terms or words of a constitution, depending upon ratification by the people, should be interpreted in a sense most obvious to the common understanding at the time of its adoption, in the belief that such was the sense or meaning designed by such terms or words. In truth it is a well settled principle that the paramount object or purpose of all construction or interpretation in respect to written laws is to discover or ascertain the intention of such laws. *Bishop* v. *State*, 149 Ind. 223, 39 L. R. A. 278, 63 Am. St. 279; *Storms* v. *Stevens*, 104 Ind. 46; *Stout* v. *Board, etc.*, 107 Ind. 343. Guided by this rule, in the light of the circumstances as they existed at the time the amendment in question was engrafted upon our fundamental law, we are led to conclude that it must have been the common understanding of the proposers and rati-

fiers of this constitutional amendment that the words "po-
litical or municipal corporations", as therein contained,
were intended and designed to mean and apply to municipal
corporations created or organized for school purposes. The
declaration 'no political or municipal corporation in this
State" certainly by its plain terms was, to say the least,
intended by the framers and ratifiers thereof to refer to and
control all municipal croporations existing at the time of
its adoption. As to whether it was intended to apply to
and regulate such as might thereafter be created is a propo-
sition not necessarily involved in this action. That the pro-
hibition declared by the Constitution under its plain lan-
guage was intended to apply singly to the indebtedness of
each corporation, and not to the indebtedness in the aggre-
gate of two or more corporations, notwithstanding the fact
that they might exist and be included in the same territorial
limits, in our opinion can not be successfully controverted.
In fact it would be difficult to conceive how plainer lan-
guage than that used by the framers of this amendment
could have been employed to design or indicate its meaning.

The argument of appellants to the effect that in 1890
and 1900 there existed within the corporate limits of the
city of Indianapolis but one corporation, which was the
civil city of Indianapolis, and that, under the laws of 1871
and 1899, heretofore considered, the legislature simply pre-
scribed, in regard to such, different functionaries, to dis-
charge different functions, and, inasmuch as there was but
one municipal corporation, the civil city, and as the in-
debtedness created by the bonds issued in 1890 and now
sought to be refunded was in excess of the limit fixed by
the Constitution, such indebtedness is therefore void, is not
supported by law, and may be said to be a species of un-
sound logic. That, under the act of 1899, the legislature
recognized the school city existing within the territorial
limits of any civil city to which such act was applicable,
and thereby legislated in reference to such school city, is

made evident by the frequent mention of the school city in that statute.

Equally untenable is their argument whereby they concede that it may be true that a school city is a distinct municipal corporation, but contend that it is only an agency of the civil city to discharge the functions of the latter in respect to the affairs of common schools. It is established by the decisions of this court heretofore cited that this proposition is not true. The government or management of our free common schools, as it has been frequently affirmed by this court, is a matter of State concern, and the various school corporations and school boards are, as a general rule, the agencies of the State in this respect for executing its functions. As well said by counsel for appellee, if one sustains the relation of agent to another, it must be with reference to some matter which pertains to or concerns the principal.

Counsel for appellants also advance the claim that if the amendment in question is not interpreted to be a prohibition as against two or more corporations, in the aggregate, within the same territory, then, under such circumstances, the legislature might create civil corporations within the boundaries of an incorporated civil city for the purpose of performing some of the functions which under the law devolved upon the latter. One of these corporations so created, it is claimed, might be for fire purposes, and one for park purposes, another for sanitation purposes, and each alone be permitted to contract an indebtedness to the limit provided by the Constitution, and by this method it is asserted that the legislature might attempt to evade the prohibition of the constitutional provision or virtually render it of no effect by the multiplication of municipal corporations.

We can not assume that the legislature will disobey the organic law of the State, or will ever attempt to create other corporations within existing incorporated towns or cities for the redistribution of the powers or functions of such

municipalities, in order to evade the restriction in respect to the debt limit in our Constitution. If legislation to this effect should be passed in the future, a proper case, no doubt, will be presented for the decision of this court, and the question may then be determined.

We have heretofore said in this opinion that the indebtedness, the payment of which is sought herein to be enjoined, is the indebtedness and liability of the school corporation of the city of Indianapolis, and not the indebtedness or liability of the civil city, and the former, and not the latter, is obligated to pay it.

A debt is defined to be, in its general sense, a specific sum of money which is due or owing from one person to another, and denotes not only an obligation of the debtor to pay, but the right of the creditor to receive and enforce payment. *Board, etc.,* v. *Harrell,* 147 Ind. 500, and cases there cited.

In the case last cited it is said: "The mere fact that the boundaries of the taxing district and the township are the same, and that the property within those boundaries is liable to be assessed with benefits according to its value, does not make the bonds a debt of the township."

The board of school commissioners, which contracted the indebtedness here involved, was not empowered, under the law, to make it a liability of the civil city, and the latter is in no sense the debtor, and the payment thereof, under the circumstances, can not be enforced against it. It must surely follow, under such circumstances, that it can not be held to be an indebtedness which, under or within the meaning of the amendment in question, must be considered and taken into account in order to ascertain whether the civil city of Indianapolis is within the debt limit as therein fixed. The bonds in dispute, as we have stated, constitute an indebtedness of the school corporation, hence they must be estimated and taken into account in determining the question as to whether such school corporation has become indebted in excess of the amount to which it is limited by the Constitution.

We conclude and hold, under the interpretation which we place upon the constitutional provision in controversy, that the debts of the civil city of Indianapolis and those of its school corporation are not to be aggregated to determine the debt limit to which either may be entitled under the Constitution, but that the right or power of each of these corporations to contract an indebtedness not in excess of the limit fixed by the Constitution is affected only by its own existing debts. We are supported in this conclusion by the following decisions, arising out of constitutional provisions of sister states similar to and of like character of the one involved in this action: *Wilson* v. *Board, etc.,* 133 Ill. 433, 27 N. E. 203; *State* v. *Common Council, etc.,* 96 Wis. 73, 71 N. W. 86; *Board, etc.,* v. *National Life Ins. Co.,* 94 Fed. 324, 36 C. C. A. 278; *Todd* v. *City of Laurens* (S. C.), 26 S. E. 682.

In *Wilcoxon* v. *City of Bluffton,* 153 Ind. 267, the majority of this court held that the legislature, by the act of 1873, had imposed the duty or burden upon civil cities, like Bluffton, of issuing and negotiating bonds to obtain funds to be used for the erection of school buildings, and that such bonds constituted an indebtedness of the civil city alone for which it was liable, and therefore must be estimated and considered in ascertaining whether its indebtedness was in excess of this constitutional limit. The decision in that appeal in no manner conflicts with the holding in the case at bar as the distinction is obvious.

It follows, from the conclusions which we have reached, and we so adjudge, that the bonds in controversy in this action are valid obligations of the school corporation of the city of Indianapolis, for the payment of which such school corporation is liable; and that the payment or refunding of these bonds can not be enjoined under the facts alleged in the complaint.

The demurrers to the complaint were properly sustained, and the judgment below is therefore affirmed.

Monks and Dowling, JJ., dissent.

Campbell *v.* City of Indianapolis.

## CONCURRING OPINION.

BAKER, C. J.—I hold that the bonds in question are the bonds of the school city of Indianapolis because I find, as stated in my dissenting opinion in *Wilcoxon* v. *City of Bluffton,* 153 Ind. 281, *et seq.,* (1) that the legislature had constitutional authority to create school corporations, which should be within or should cover the territory occupied by preëxisting civil corporations, and which should be separate and distinct from the civil corporations; (2) that the legislature did create such separate and distinct school corporations, of which the school city of Indianapolis was and is one; (3) that the school corporation and the civil corporation, which cover the same territory, are as separate and distinct in their powers, rights, and duties as if they were in widely separated localities in the State; (4) that neither the school corporation nor the civil corporation can exercise any of the functions of the other; (5) that the control of all school affairs including the erection and maintenance of school buildings is exclusively the function of the school corporation; (6) that any officers, no matter what their titles or other official duties may be, who are required by law to take part in exercising any of the functions that appertain to a school corporation, do so necessarily as an agency of the school corporation; (7) that neither the school corporation nor the civil corporation can be made to assume and pay any of the liabilities of the other; (8) that indebtedness for the erection of school buildings is necessarily the exclusive liability of the school corporation; (9) that bonds to provide money for school purposes, which are payable exclusively out of the revenues of the school corporation, are necessarily the bonds of the school corporation; and (10) that any officers, no matter what their titles or other official duties may be, who are required by law to do anything in relation to the issuance of such bonds, do so necessarily as an agency of the school corporation.

I concur in the result in this case because I am convinced

that the foregoing propositions are correct and are controlling on the main question. But if I could become satisfied that the opinion in the Wilcoxon case was sound, I should be unable to vote for an affirmance of this case. If, in the smaller cities, the trustees of the school corporation, in receiving the consideration for which the bonds are issued and in filing the report on which the bonds are based and without which the bonds can not lawfully be issued, act as an agency of the civil corporation, I see no valid reason why the school commissioners of the larger cities should not also be held to be a mere agency of the civil corporation. If A incurs a personal liability for C's purchases by signing and issuing to B a bond which on its face shows that the money is borrowed of B to pay for C's purchases and is turned over to C, and A is signing the bond to B at C's request, that A pledges only the property of C for the repayment of the loan, and that B agrees that payment shall be made exclusively from C's moneys,—then A or any one else might as well be held liable for any and all of C's indebtedness. For, if an agent of a disclosed principal may be held to be the obligor, there should be no difficulty in holding a stranger to be an agent.

In the larger and in the smaller cities, the school corporation was created by the same general law. Bonds for school purposes by different statutes are expressly authorized in all cities. The fact that different agencies for the issuance of school bonds are appointed for differently sized cities can not change the obligor. And yet, by the two decisions, the taxpayers have the result that school bonds issued to pay for school buildings are in small cities the obligations of the civil corporation and in large cities the obligations of the school corporation, though in both instances the buildings are the exclusive property of the school corporation and the bonds are payable only from the moneys of the school corporation. If, by construction, any class of taxpayers should be guarded against a *four* per cent. limit of

indebtedness, a glance at the history of municipal government ought to induce the belief that the taxpayers of the larger cities need that protection. But, nevertheless, the present result is reached, though all statutes on the subject, in respect to all cities, are parts of the "school law" of the State; though the primary rules of interpretation require all statutes on the same general subject to be construed as harmonious parts of a consistent system; and though the legislature, in obedience to the mandate of the Constitution, created all school corporations as instrumentalities of the State in order to provide for a general and uniform system.